PEOPLE v KILBOURN

Docket No. 106190. Argued March 6, 1997 (Calendar No. 15). Decided
    June 17, 1997.

Robert W. Kilbourn was convicted by a jury in the Eaton Circuit
    Court, Thomas S. Eveland, J., of two counts of assault with intent
    to do great bodily harm less than murder. The Court of Appeals,
    SAAD, P.J., and BANDSTRA and M. G. HARRISON, JJ., reversed in an
    unpublished memorandum opinion and remanded the case for a
    new trial, finding that prior inconsistent statements made by a wit-
    ness to a police officer, which implicated the defendant, were inad-
    missible hearsay and did not become admissible for impeachment
    purposes (Docket No. 155397). The people appeal.

In an opinion by Justice WEAVER, joined by Chief Justice MALLETT,
    and Justices BOYLE and RILEY, the Supreme Court held:

The witness' statement was admissible for impeachment
    purposes.

The rule, set forth in People v Stanaway, 446 Mich 643 (1994),
    that impeachment should be disallowed when the substance of the
    statement purportedly used to impeach the credibility of the wit-
    ness is relevant to the central issue of the case, and there is no
    other testimony from the witness for which his credibility was rele-
    vant to the case, does not apply in this case. Although the sub-
    stance of the statements used to impeach the credibility of the wit-
    ness were relevant to a central issue of the case, the second prong
    of the test was not met because there was other relevant testimony
    from the witness for which his credibility was relevant. Thus, the
    officer's testimony was admissible because it could properly be
    used to impeach the credibility of the witness.

Justice BRICKLEY, concurring, stated that Stanaway should be
    applied with flexibility. Because this case is factually distinguisha-
    ble from Stanaway, on the basis of the facts presented, reversal is
    not required.

Reversed and remanded.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that
    a prosecutor may not use an elicited denial as a springboard for
    introducing substantive evidence under the guise of rebutting the
    denial, nor may the prosecutor elicit a denial from a witness on a

material matter so that it can later be introduced as evidence in rebuttal. The matter in this case was collateral because it involved a hearsay statement that otherwise would have been inadmissible. The majority's refusal to consider the defendant's argument on the ground that a defense hearsay objection was not specific enough is contrary to Michigan Supreme Court precedent as well as federal law.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Jeffrey L. Sauter,* Prosecuting Attorney, and *William M. Worden,* Senior Assistant Prosecuting Attorney, for the people.

*James Bonfiglio* for the defendant.

WEAVER, J. In this case we consider whether a witness' prior inconsistent statements, which implicated the defendant, are admissible for impeachment purposes. The Court of Appeals found that the prior inconsistent statements were inadmissible hearsay that could not be used for the purpose of impeachment, reversed defendant's convictions and remanded the case for a new trial. We reverse the judgment of the Court of Appeals, and remand with instructions.

I

After a jury trial in the Eaton Circuit Court, Robert Kilbourn, the defendant, was convicted of two counts of assault with intent to do great bodily harm less than murder.[1] The events giving rise to the charges related to the firing of a firearm into the home of Pamela and Gary McNamara. Testimony at trial established that on the evening of August 18, 1991, at approximately 8 o'clock, Mr. and Mrs. McNamara were walking outside their home when they heard

---

[1] MCL 750.84; MSA 28.279.

loud noises coming from the direction of the Kilbourn
residence. According to Pamela McNamara's testi-
mony at trial, she and her husband saw several peo-
ple at the Kilbourn residence that appeared to be
fighting. Mrs. McNamara immediately called the
Eaton County Sheriff's Department. Two deputy sher-
iffs responded to the call. No arrests were made. Mrs.
McNamara testified that soon thereafter she received
a threatening phone call from Robert Kilbourn, Sr.

Pamela McNamara further testified that on that
same evening, at approximately 11 o'clock, she and
her husband were awakened by a loud crashing noise
in their kitchen. As Mr. McNamara got up from bed to
investigate the noise, a gun went off, and a bullet
passed directly over his head. Both Mr. and Mrs.
McNamara retreated to the floor for safety. They
heard an additional four to five shots being fired near
or at their home.

Shortly thereafter, Deputy Michael Schnepp and
Deputy Leland Taylor arrived at the McNamara resi-
dence in response to a "911" call from Mr. McNamara.
At trial, Deputy Schnepp testified that when he
arrived at the McNamara residence, he found both
Mr. and Mrs. McNamara in their home, visibly terri-
fied. After investigating the McNamara home, Deputy
Schnepp discovered a broken axe handle just outside
the broken kitchen window. He also observed several
bullet holes in the McNamara home. Both Mrs. McNa-
mara and Detective Leonard Benden testified that a
trail of damage revealed that the miscreants had with-
drawn from the McNamara residence in the direction
of the Kilbourn residence.

II

Robert Kilbourn, Sr., the defendant's father, was called as a witness in the State's case in chief. Mr. Kilbourn testified that on the day of the incident, he and his three sons—including the defendant—defendant's girlfriend and friend, were at his trailer drinking, talking, and partying. According to Mr. Kilbourn, he and his guests drank approximately three fifths and half a gallon of whiskey that evening. After police finished their inquiry into the report of domestic violence and noise at the Kilbourn residence, Mr. Kilbourn testified that he called the McNamaras simply to ask them to first call him before calling the police. He testified that Pamela McNamara became irate with him on the telephone, and that he did not threaten her in any way. Mr. Kilbourn could not remember if he had discussed the phone call with any of his sons.

During the prosecutor's direct examination of Mr. Kilbourn, the following exchange regarding prior conversations between Mr. Kilbourn, Sr., and Detective Bender occurred:

> *Q.* [In] [o]ne of those conversations did you indicate to Detective Benden that Robert Wesley Kilbourn [defendant] was responsible for the shooting?
>
> *A.* No, I don't.
>
> *Q.* You don't recall that?
>
> *A.* No. I recall telling Detective Benden that Robert would turn himself in. That's when Detective Benden told me that Craig had already called and admitted doing the shooting.

Later in the state's case in chief, on redirect examination, the following exchange between the prosecutor and Detective Benden occurred:

*Q.* Sir, did you have a discussion with Robert Kilbourn, Sr. on the telephone when you were trying to get everyone together to talk to them?

*A.* I had quite a few conversations with Mr. Kilbourn on the phone.

*Q.* Directing your attention [to] the 26th of August 1991, did you receive a phone call from him?

*A.* Yes.

*Q.* On that date did he [Robert Kilbourn, Sr.] indicate who was responsible for the shooting?

*A.* Yes.

                    *        *        *

*Q.* What did he state?

*A.* That little Bob [defendant] was the one who shot into the house.

Defendant objected to this questioning on the basis that the officer's testimony regarding statements purportedly made by Mr. Kilbourn was inadmissible hearsay. The trial judge overruled the objection, holding that it was admissible for impeachment purposes to contradict Mr. Kilbourn, Sr.'s, previous in-court denial of making the statement. The trial judge instructed the jury that the testimony of Detective Benden regarding Mr. Kilbourn, Sr.'s, prior inconsistent statement could only be used to evaluate the credibility of Mr. Kilbourn, Sr., and not to decide defendant's guilt or innocence.

A jury found defendant guilty of two counts of assault with intent to do great bodily harm less than murder. The trial court judge sentenced defendant to 60 to 120 months in prison. The Court of Appeals reversed defendant's convictions and remanded the case for a new trial. We granted leave to appeal, lim-

ited to the issue of admissibility of the prior inconsistent statement.

## III

In reversing defendant's conviction, the Court of Appeals held that the testimony by Detective Benden regarding out-of-court statements purportedly made by Robert Kilbourn, Sr., which implicated defendant as the person who had shot into the victims' house, was inadmissible. The Court of Appeals held that the statements were hearsay and "did not become admissible for impeachment purposes merely because the prosecutor had previously elicited a denial of the purported statement[s] by Robert Kilbourn, Sr." Unpublished memorandum opinion, issued September 22, 1995 (Docket No. 155397). In support of this, the Court of Appeals relied on *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994). However, it apparently misread the rule set forth by this Court.

Under the current provision of MRE 607 the government can impeach its own witness. The general rule is that evidence of a prior inconsistent statement of the witness may be admitted to impeach a witness even though the statement tends directly to inculpate the defendant. *United States v Miller*, 664 F2d 94 (CA 5, 1981). *People v Stanaway* provided an exception to this rule: A prosecutor cannot use a statement that directly tends to inculpate the defendant under the guise of impeachment when there is no other testimony from the witness for which his credibility is relevant to the case.

In *People v Stanaway*, the defendant was charged with three counts of third-degree criminal sexual conduct, MCL 750.520d(1)(a); MSA 28.788(4)(1)(a),

involving sexual intercourse with the complainant
when she was fourteen years old. During the prosecu-
tion's case in chief, Stanaway's nephew was called to
testify. When asked by the prosecutor if he had made
a statement to Officer Peters regarding an incriminat-
ing statement Stanaway had made to the witness, the
witness denied ever having made such a statement.
The prosecution then called Officer Peters to the
stand. The officer testified, over hearsay objections,
that the nephew told the officer that Stanaway had
said he had had sexual relations with a young girl and
would be in a lot of trouble if caught. This Court held
that the prior inconsistent statements could not be
used to impeach credibility under MRE 613. The rea-
soning behind this is that the witness had no direct
knowledge of any of the alleged incidents and was
out of town at the time the incident would have
occurred.

The rule set forth in *People v Stanaway* is that the
impeachment should be disallowed when (1) the sub-
stance of the statement purportedly used to impeach
the credibility of the witness is relevant to the central
issue of the case, and (2) there is no other testimony
from the witness for which his credibility was rele-
vant to the case.

This is a very narrow rule and does not apply in the
instant case. Although the substance of the state-
ments used to impeach the credibility of the witness
were indeed relevant to a central issue of the case,
the second prong of the test was not met because
there was other relevant testimony from the witness
for which his credibility was relevant. Robert Kil-
bourn, Sr., testified about a number of events that

took place before the shooting, and indeed was a key actor in some of these events.

The facts here are distinguishable from the situation in *People v Ince*, 21 F3d 576 (CA 4, 1994).[2] In *People v Ince*, the court held that the probative value of the contradicting witness' testimony for impeachment value was "nil." The court noted in *Ince* that the witness' in-court testimony did not affirmatively damage the government's case, and the prosecution had no need to attack her credibility. *Id.* at 581.

Here, there was at least one direct conflict between Mr. Kilbourn's testimony at trial and that of another witness. Mr. Kilbourn testified that when he phoned Mrs. McNamara he only asked the McNamaras to contact him before calling the police, and that he made no threats. Mrs. McNamara, on the other hand, testified that Mr. Kilbourn had made a threatening phone call to her. We find that the officer's testimony was admissible, because it could properly be used to impeach the credibility of Mr. Kilbourn.

IV

Defendant also alleges that the testimony of Officer Benden was inadmissible because the testimony was designed to impeach Robert Kilbourn, Sr., on a collateral matter. The record shows that no objection was made at trial on the grounds now asserted on appeal.[3]

---

[2] We note that the rule set forth in *Stanaway* is narrower than the similar rule in the federal courts. The federal courts have held that impeachment may not be used as a subterfuge to place otherwise inadmissible hearsay before the jury. *United States v Rogers*, 549 F2d 490 (CA 8, 1976). However, *Stanaway* is limited to hearsay statements that are relevant to the central issue of the case, not merely "otherwise . . . inadmissible hearsay." *Id.* at 693.

[3] At trial defendant objected to this testimony solely on the basis of hearsay.

It is well established that objections to admissibility not properly raised at trial cannot be later asserted on appeal. *Marietta v Cliffs Ridge, Inc*, 385 Mich 364, 374; 189 NW2d 208 (1971).

V

We reverse the Court of Appeals opinion vacating defendant's conviction. We remand this case to the Court of Appeals for consideration of those issues that defendant had raised and the Court of Appeals did not address.

MALLETT, C.J., and BOYLE and RILEY, JJ., concurred with WEAVER, J.

BRICKLEY, J. (*concurring*). I concur in the result reached by the majority. However, I cannot fully agree with the majority's reasoning. I would find that *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994), is not as technical as the majority suggests. Rather, I would apply *Stanaway* with more flexibility. Further, I would find that this case is factually distinguishable from *Stanaway*, and, therefore, a reversal is not required.

I

The majority finds that *Stanaway* only applies when

(1) the substance of the statement purportedly used to impeach the credibility of the witness is relevant to the central issue of the case, and (2) there is no other testimony from the witness for which his credibility was relevant to the case. [*Ante* at 683.]

The majority then finds that Mr. Kilbourn[1] provided sufficient testimony so as to avoid a violation of *Stanaway. Ante* at 683-684.

I feel that this is too formal a reading of *Stanaway*. That case was a response to an attempted manipulation of the hearsay rules. A witness, the defendant's nephew, denied informing a police officer that the defendant had admitted involvement in the crime. *Id.* at 688-690. The prosecution then called the officer to testify that the nephew had previously told him that the defendant had made an incriminating statement. *Id.* at 690. The defense raised a hearsay objection, which the prosecution resisted by arguing that the officer was only called to impeach the nephew's credibility with an inconsistent statement. *Id.* at 690-692.

The Court first noted that, other than the statement regarding the alleged admission, the nephew had not provided any relevant testimony. *Id.* at 692. Thus, the witness had failed to provide any testimony that made his credibility relevant. *Id.* at 693. Rather, "the prosecutor used the elicited denial as a means of introducing a highly prejudicial 'admission' that otherwise would have been inadmissible hearsay." *Id.* at 693. Thus, on the basis of the subject matter of the witness' testimony, the Court determined that the impeachment should not have been allowed. *Id.*

The majority does not adequately identify the testimony that brought Mr. Kilbourn's credibility into question. Mr. Kilbourn was asked questions that were cumulative, concerned undisputed facts, or were not

---

[1] I will refer to the defendant's father as Mr. Kilbourn.

directly relevant to the main issue in the case.[2] Further, Mr. Kilbourn was unconscious for the majority of the night and had no firsthand knowledge about what occurred at the McNamara residence. Thus, the majority of his testimony did not bring his credibility into question.

However, Mr. Kilbourn did testify that Officer Benden told him that one of his other sons, Craig Kilbourn, had confessed to the crime. This testimony presented the possibility of another confession, and was relevant to the heart of the case. Further, it placed Mr. Kilbourn's credibility at issue, especially regarding the conversation he had with Officer Benden. Thus, the prosecution was allowed to respond to this testimony by recalling Officer Benden.

The majority disregards this point, and bases its finding on Mr. Kilbourn's testimony as a whole. However, as I state above, most of this testimony was cumulative. I would not allow the prosecution to avoid the rule in *Stanaway* by eliciting such testimony.

Further, I feel that the Court should recognize that the impeachment testimony in this case did not have the effect of a confession as did the testimony in *Stanaway*. The *Stanaway* Court was concerned that the officer's testimony would be construed as evidence of a confession. *Id.* at 695. This concern grew from the fact that the officer testified that the defend-

---

[2] While it is true that Mr. Kilbourn did testify regarding whether he called the McNamaras, the prosecution had already elicited testimony from Mrs. McNamara on that issue. Thus, the prosecution either asked Mr. Kilbourn a cumulative question or wished to provide Mr. Kilbourn the opportunity to contradict the testimony of the McNamaras. Because the McNamaras' testimony provided evidence of motive, it is unlikely that the prosecution wished to impeach that testimony.

ant's nephew told him that the defendant had admitted having a sexual encounter with a young girl. *Id.* In contrast, Officer Benden merely testified that Mr. Kilbourn had told him that the defendant had fired the shots. There was no mention of any admission by the defendant to Mr. Kilbourn. Therefore, even if taken as substantive evidence, Officer Benden's testimony did not amount to evidence of a confession. Thus, this case does not involve the type of error found prejudicial in *Stanaway*. This fact further distinguishes this case from *Stanaway*.

I concur in the reversal of the decision of the Court of Appeals.

CAVANAGH, J. (*dissenting*). The majority states that it will not consider defendant's assertion that the testimony of Officer Benden was inadmissible because it was designed to impeach the witness on a collateral matter because "[t]he record shows that no objection was made at trial on the grounds now asserted on appeal." *Ante* at 684. Because the majority's refusal to consider defendant's argument is contrary to prior Michigan Supreme Court cases as well as federal law, I respectfully dissent.

First, *People v Stanaway*, 446 Mich 643, 693; 521 NW2d 557 (1994), stated that "a prosecutor may not use an elicited denial as a springboard for introducing substantive evidence under the guise of rebutting the denial. *People v Bennett*, 393 Mich 445; 224 NW2d 840 (1975)." Therefore, *Stanaway* itself relied on the collateral-matter rule asserted in *Bennett*. As stated several times in *Stanaway*, the only objection to the impeachment testimony was on hearsay grounds. The Court stated:

> While the prosecutor could have presented defendant's alleged admission by way of the nephew's statement, he could not have delivered it by way of the officer's testimony because the statement would be *impermissible hearsay*. [*Id.* at 693 (emphasis added).]

Second, in *Bennett, supra,* the exact position relied on by the majority was specifically rejected by the *Bennett* majority. The dissent in *Bennett* tried to make the same assertion the majority now makes when it stated that "[d]efense counsel objected to the rebuttal testimony in question, but only in general terms. He did not raise the [collateral] rationale in objection. In the absence of specifically framed objection, the trial court permitted defendant rebuttal . . . ." *Id.* at 452. However, this did not stop the Court from holding that the prosecution cannot elicit a denial from a witness on a material matter so that it can later introduce evidence in rebuttal.

Finally, even the federal court case cited by the majority, *People v Ince,* 21 F3d 576 (CA 4, 1994), disallowed a collateral attack where the only objection was on hearsay grounds. The court stated:

> [T]he trial judge should have recognized the Government's tactic for what it was—an attempt to circumvent the hearsay rule and to infect the jury with otherwise inadmissible evidence of [the defendant's] alleged confession. [*Id.* at 582.]

The entire reason that the matter in this case was collateral is because it involved a hearsay statement that otherwise would have been inadmissible. To hold that an objection on hearsay grounds was not specific enough flies in the face of Michigan Supreme Court

precedent as well as federal law. For these reasons, I respectfully dissent.

KELLY, J., concurred with CAVANAGH, J.