# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JEROME WALTER KOWALSKI,

      Defendant-Appellant.

UNPUBLISHED
December 2, 2014

No.   315495
Livingston Circuit Court
LC No.   08-017643-FC

Before:  K. F. KELLY, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of first-degree murder, MCL 750.316, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  The trial court sentenced him to two terms of life imprisonment without parole for the murder convictions and to two terms of two years' imprisonment for the felony-firearm convictions.  We affirm.

On May 1, 2008, the brother and sister-in-law of defendant Jerome Walter Kowalski, Richard and Brenda Kowalski, were found dead of multiple gunshot wounds in their home in Osceola Township.  Defendant provided a number of statements to the police in which he admitted responsibility and made other inculpatory, albeit inconsistent, statements concerning the circumstances of the shooting.  In addition, a note was found, apparently written by defendant, in which he stated that he was sorry, that he thought he had killed the victims but had no recollection of it at all, and that he must have been in an alcoholic blackout.

On appeal, defendant maintains that the trial court erred when evidence that defendant had taken a polygraph examination was introduced through videotaped recordings of various interviews with investigating officers. Defendant argues that the trial court should have granted defendant's request for a mistrial due to the inclusion of these references.  We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Otriz-Kehoe,* 237 Mich App 508, 513-514; 607 NW2d 725 (1999).  [R]eference to taking or passing a polygraph test is error." *People v Nash*, 244 Mich App 93, 97; 625 NW2d 87 (2000); see also *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).  To determine whether a

defendant was prejudiced by an improper reference to polygraph evidence, this Court considers the following factors:

> (1) whether defendant objected to and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster a witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted. [*Nash*, 244 Mich App at 98, quoting *People v Kiczenski*, 118 Mich App 341, 347; 324 NW2d 614 (1982), quoting *People v Rocha*, 110 Mich App 1, 9; 312 NW2d 657 (1981) (internal quotation marks omitted).]

Some examples this Court has used for situations not requiring reversal include when the reference may be characterized as "a matter of defense strategy, the result of a nonresponse answer, or otherwise brief, inadvertent and isolated." *Kiczenski*, 118 Mich App at 347.

Defendant bases his claim on four instances of alleged error. However, we note that one reference, coincidentally the most egregious, in which officers discussed defendant "[doing] okay" on parts of the polygraph, was never actually played for the jury. Rather, a transcription error was made which misled appellate counsel into believing that this portion of defendant's statement was not redacted.

The second allegation of error concerns a portion of the interview between defendant and a detective who also served as the polygraph examiner:

> *Q.* [Detective]: Okay. What if I, what if I told you there was more than two shots involved? Would that surprise you?
>
> *A.* Yeah.
>
> *Q.* How would you feel, how would you answer this question: did you call your brother Rick or Richard? You said Rick, but you called him Richard when you first got here.
>
> *A.* Yeah. I usually go by Rick, but you guys know him by Richard, so I thought I'd, you know –
>
> *Q.* And his wife's name one more time?
>
> *A.* Brenda.
>
> *Q.* Okay. If I asked did you, did you shoot Richard and Brenda, how would you answer that question?
>
> *A.* You know, I've thought about that. I guess I would say yes.
>
> *Q.* Okay. So, what if I asked did you, did you do this with anyone else, did you kill your brother with anyone else?

*A.* No, no one else was there.

*Q.* Okay. What about if I asked if it was on accident or did you do it deliberately or was it an accident?

*A.* (indecipherable).

The trial court refused to allow defendant to redact this portion of the interview because it made no mention of a polygraph examination and could not reasonably be read to infer that one was occurring or imminent. We agree. This questioning, albeit by an officer who is also a polygraph examiner, does not appear, at least without underlying knowledge not available to the jurors, to have anything to do with a polygraph examination.

The third alleged error occurred when the jury was shown a conversation between defendant and a detective in which defendant denied any involvement in the murders. This conversation contained questions regarding whether defendant would pass a polygraph examination if one were offered to him, and defendant's assertion that he would pass it. No objection was made to the introduction of this evidence. With respect to these initial "hypothetical" questions posed by the detective, no statement was made or implied that defendant had actually taken a polygraph test or was going to do so. Rather, the exchange appears more to express a doubt on the detective's part concerning defendant's denial of involvement in the killings. Therefore, defendant cannot show that the admission of this testimony was plainly erroneous in itself.

Defendant also complains of the inclusion of a self-reference to the detective who also conducted the polygraph test, who stated that he was no psychologist, but only "the polygraph guy," during a questioning session with defendant. While this reference was not a statement that defendant was actually given a polygraph test, when coupled with the above reference to the likely results were defendant to take such a test, the jury could *possibly* infer that one occurred. However, the trial court found that a mistrial was not warranted simply because defense counsel missed the reference. This reasoning was erroneous, in that it was incumbent on the prosecution not to present inadmissible evidence in its case-in-chief; while the burden of redaction was shared by defense counsel for the sake of expediency, the responsibility continued to be the prosecutor's, not defense counsel's. However, the trial court also found that the fact that the jury may have known that the detective was a polygraph examiner was not particularly prejudicial, because nothing in the reference indicated that defendant actually took a polygraph examination, and polygraph examiners are often police officers and the jury could have viewed the situation as involving just another interviewing officer who happened to also be an examiner. We agree that a mistrial was not warranted. Neither piece of evidence established that defendant *actually took* a polygraph examination or referenced any results. The reference to the detective as an examiner was inadvertent and brief, and both the questioning by the first officer and the reference by the examiner could be fairly seen to have simply been a part of an ordinary questioning process by investigators. The references were not designed to bolster or attack credibility, and defendant was not shown to be more, or less, credible. We thus find that the trial court did not abuse its discretion when it determined that the polygraph references did not deny defendant his right to a fair trial.

Defendant next argues that he is entitled to a new trial due to trial counsel's failure to object to the introduction of impermissible impeachment evidence. Whether a defendant received ineffective assistance of counsel presents a mixed question of fact and law. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). A trial court's factual findings, if any, are reviewed for clear error; questions of law are reviewed de novo. *Id*. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different; and (3) the result that did occur was fundamentally unfair or unreliable. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (internal citation and quotation marks omitted).

During trial, the prosecutor presented the testimony of defendant's cousin. She was questioned about the first time she told defendant about the killings. During direct examination, she was asked how defendant responded and she testified that he asked how this could happen and who would kill them. She was then shown a police report in which she was reported as having told the officer that defendant asked her the more specific question of who would have shot them, a detail which, as the prosecutor argued, would have revealed that defendant possessed more knowledge of the killings than he would were he innocent. She denied making such a statement.

Following her denial, the prosecution presented the testimony of a Michigan State Police detective who stated that he spoke with defendant's cousin in May 2008, when she arrived at the police post to tell the officers about a conversation she had had with defendant. According to the officer, she stated that, when she told defendant about the killings, he replied, "Who shot them?" According to the detective, defendant's cousin came to the police because she was very concerned because she had not told defendant how the victims had been killed. Before this testimony, and after some argument by the parties, the trial court determined that this evidence could only be used as impeachment, not substantive, evidence. The trial court provided a limiting instruction at the end of trial.

Defendant maintains that counsel was ineffective for failing to recognize that the officer's testimony concerning his cousin's prior statement was inadmissible even as impeachment evidence.

"Extrinsic evidence of a prior inconsistent statement can be used to impeach but it cannot be used to prove the truth of the matter asserted, unless, of course, it falls within a hearsay exception." *People v Jenkins*, 450 Mich 249, 273; 537 NW2d 828 (1995). MRE 613(b) provides that extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is allowed to explain or deny the statement and an adverse party is given an opportunity to examine the witness. Generally, evidence of a prior inconsistent statement of a witness may be admitted for impeachment purposes even if the statement tends to directly inculpate the defendant. *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997). However, a prosecutor may not introduce evidence of a statement that directly inculpates the defendant under the guise of impeachment if (1) the substance of the statement is relevant to the

-4-

central issue of the case and (2) there is no other testimony from the witness for which his credibility was relevant to the case. *Id*. at 682-683; *People v Stanaway*, 446 Mich 643, 692-693; 521 NW2d 557 (1994). *Stanaway* further explained that "a prosecutor may not use an elicited denial as a springboard for introducing substantive evidence under the guise of rebutting the denial." *Stanaway*, 446 Mich at 693.

Defendant contends that *Stanaway* controls here. We agree. The substance of defendant's cousin's prior statements to the officer was relevant to the central issue of the case, and therefore, they meet the first prong of the *Stanaway* analysis. Further, while defendant's cousin provided some other evidence, the discussion between the prosecution and defense shows that, not only did the prosecutor seek to impeach only the statement concerning defendant's response to her, the prosecutor wanted the officer's testimony to be used as substantive evidence of defendant's guilt. Consequently, we find that the second prong of the *Stanaway* analysis is also satisfied. Because the prosecutor had no intent to challenge defendant's cousin's credibility with respect to her other testimony, admission of her prior statements to the officer was unnecessary and amounted to an attempt to substantively use inadmissible hearsay.

However, defendant cannot show that he is entitled to relief. As noted above, the trial court specifically told the jury that it could not use the cousin's statement to the officer as substantive evidence. More importantly, defendant's lengthy, if somewhat inconsistent, admissions that he shot the victims were presented in their entirety to the jury, as was his note admitting guilt. In light of this evidence, as well as additional background evidence showing possible sources of prior tension between defendant and his brother, defendant cannot show a reasonable probability that, were it not for counsel's error, the result of his trial would have been different. Neither a reversal nor a remand is warranted.

Defendant lastly argues that he is entitled to a new trial due to ineffective assistance of counsel as well as error on the part of the trial court when the court determined that a juror who had coached the victim's granddaughter remained on the jury panel after the parties discovered this fact during trial. We disagree. In general, a trial court's decision to remove a juror during trial is reviewed for an abuse of discretion. *People v. Tate*, 244 Mich App 553, 559; 624 NW2d 524 (2001).

The trial court did not abuse its discretion. Defendant states that the juror should have been removed pursuant to MCR 2.511(D)(2) and (3), which provide:

> The parties may challenge jurors for cause, and the court shall rule on each challenge. A juror challenged for cause may be directed to answer questions pertinent to the inquiry. It is grounds for a challenge for cause that the person:
>
> * * *
>
> (2) is biased for or against a party or attorney;
>
> (3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be . . . .

MCR 6.412(D)(2) provides that if "the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel."

Defendant cannot show that he is entitled to a new trial. The juror had previously disclosed that she had read information about the case before trial and that she had learned nothing that would prevent her from basing her decision on the evidence presented at trial. When she was later questioned about her involvement with the victim's granddaughter, she stated that she did not know the victims or their children and had only heard the basic accusation that defendant was the assailant. She stated that the coaching situation would not affect how she viewed any of the evidence. These circumstances are insufficient to show prejudice warranting a new trial.

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence present in court. [*Irvin v Dowd*, 366 US 717, 723; 81 S Ct 1639; 6 L Ed 2d 751 (1961) (superseded by statute on other grounds).]

Likewise, defendant cannot show that he is entitled to relief because counsel failed to discover the juror's relationship to the victims' granddaughter sooner. The record contains no evidence that the juror failed to base her verdict on the evidence and instructions from the court. Therefore, even were we to find counsel's "failure" to be objectively unreasonable, defendant cannot show that this prejudiced him.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ David H. Sawyer
/s/ Patrick M. Meter