# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERRICK GREGG WALDEN,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2016

No. 327560
Berrien Circuit Court
LC No. 2014-015928-FC

Before: SHAPIRO, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted of one of two charged counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(2)(a) (victim under 13 years of age) following a jury trial. He was sentenced as a second habitual offender, MCL 711.10, to serve 300 to 900 months with credit for 227 days served. See MCL 750.520b(2)(b) (requiring a 25 year mandatory minimum sentence). Because we find that the trial court erred in allowing the admission of highly prejudicial, inadmissible testimony we reverse defendant's conviction and remand for a new trial.

There is no dispute in this case that the eight-year-old victim was sexually assaulted while at defendant's house during the evening of July 4, 2015 and during the day of July 5, 2015. DNA evidence found blood, possible saliva, and small quantities of male DNA in the victim's underwear.[1] Also, a nurse who examined the victim testified that she had an injury in her vaginal area consistent with the report of digital penetration.

The victim's and the defendant's families had spent the day together on July 4 attending a cookout and watching fireworks where the victim played with defendant's step-son and four-year-old daughter. After the fireworks, the victim as well as her mother's boyfriend's brother, Voit, went to stay the night at defendant's house. According to the victim, she went to defendant's daughter's bedroom where the two began to play on a phone. The victim testified that during this time, defendant came in the room, pushed her onto his lap and then pulled her

---

[1] Although it could be determined that the DNA sample taken from the victim's underwear was from a male, it could not be used to check for a match to defendant's DNA.

pants and underwear to the side and penetrated her vagina with his finger. The victim testified that defendant sexually assaulted her a second time in the bathroom[2] explaining that defendant sat on the toilet, pushed her onto his lap, and "stuck his finger into me and had sex with me."

Defendant did not contest the fact that the victim had been sexually assaulted, but his theory was that Voit, not himself, was the culprit. Defendant testified that both his daughter and the victim sat on his lap but testified that while he had one arm around his daughter he did not have a hand on the victim. Defendant testified that shortly thereafter he told the girls to go to sleep and left the room but that the victim then came out and told him his daughter was being mean. Defendant testified that he told his daughter to behave and then went to bed with his wife. Defendant's step-son testified that the victim and defendant's daughter sat on defendant's lap and that defendant's arms were around them both but testified that he did not see defendant do anything other than play the computer game.

Defendant's wife testified that the following morning their family woke up before the victim and Voit and went to an air show. Voit testified that the victim asked for her mother the next morning and that he texted her mother to let her know that the victim was asking for her. The victim's mother testified that she picked the victim up at 8:00 p.m. the next evening and that upon getting in the vehicle, the victim reported that defendant had assaulted her.

Defendant's daughter was called as a defense witness, and she testified that she remembered playing on the phone with the victim while sitting on defendant's lap but that she did not remember where defendant's hands were. She stated that she did not see anyone take the victim out of the room that evening and did not remember if the victim left the room on her own. On cross-examination, the prosecutor asked defendant's daughter if she recalled being interviewed by an Amelia Harper, a forensic interviewer with Children's Assessment Center who had conducted interviews with the victim and defendant's daughter after the allegations were made. Defendant's daughter responded that she did not remember talking to Harper. The cross examination of defendant's four-year old daughter continued as follows:

Q    Okay.

     Do you remember talking to somebody about touches on private parts?

A    No.

Q    You don't remember that?

A    I never seen that.

                              *   *   *

Q    Did you ever tell anybody about if you were -- what being safe meant?

---

[2] On cross-examination, the victim testified that the assault in the bathroom took place first.

-2-

A     Um, no.

Q     What does safe mean to you?

A     I don't know.

Q     Can you think for me?  Think real hard.

      What does it mean to be safe?

A     I still don't know.

Q     So you don't remember talking to a lady named Amelia?

A     No.

Q     You don't remember telling her about what it means to be safe?

A     No.

At the close of defendant's proofs, the prosecutor called Harper as a rebuttal witness,[3] and asked her to recount statements made by defendant's daughter during her interview.  She testified as follows:

Q     [D]uring the course of that interview with [defendant's daughter], did you discuss what safety meant with her?

A     Yes.

Q     And was she able to provide you with a definition of what being safe meant?

A     She gave me her own definition of being safe.

Q     And what was her definition?

A     Her definition was, when you touch kids and you don't get caught.

                              *  *  *

Q     Did you ask her who else she did touching with?  Do you need to refer to your report?

---

[3] Harper had been the first witness called by defendant.  She testified at length about statements that the victim had made during her forensic interview, but was not asked by either defense counsel or the prosecutor about whether she had also interviewed defendant's daughter.

Did she tell -- who else did she did [sic] touching with?

A      At one point she said that touching went on between her and dad.

Defense counsel objected, but the trial court overruled, stating "[t]here is case law on other evidence . . . I will allow this."

Outside the presence of the jury, defense counsel renewed his objection to this testimony and asked for a mistrial. The trial court denied the request for a mistrial offering two rationales for allowing Harper's rebuttal testimony: (1) that the statements were substantively admissible under MCL 768.27a, and (2) that it was proper impeachment of Amy's testimony. The trial court's ruling was erroneous.[4]

First, Harper's rebuttal testimony was not substantively admissible under MCL 768.27a because the testimony was hearsay and so outside the scope of the statute. The statute provides that where a defendant is charged with a sexual offense against a minor, "evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a. However, contrary to the trial court's impression, this statute does not render the rest of the rules of evidence superfluous. In *People v Watkins*, 491 Mich 450, 485; 818 NW2d 296 (2012), our Supreme Court "refuse[d] to read into MCL 768.27a a legislative intent to foreclose the application of other ordinary rules of evidence, such as those pertaining to hearsay and privilege." Harper's testimony was hearsay as it recounted the out-of-court statements of the declarant, defendant's daughter.[5] Therefore, Harper's testimony about Amy's statements was not admissible under MCL 768.27a and could not be admitted as substantive evidence.

Second, Harper's testimony was not proper impeachment evidence. "When a witness claims not to remember making a prior inconsistent statement, he may be impeached by extrinsic

---

[4] We review a trial court's decision to admit or exclude evidence for an abuse of discretion, *People v Adair*, 452 Mich 473, 485; 550 NW2d 505 (1996). The decision to deny a request for mistrial is also reviewed for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). We similarly review the trial court's decision regarding the introduction of surrebuttal testimony for an abuse of discretion. See *People v Figgures*, 451 Mich 390, 398; 547 NW2d 673 (1996).

[5] Hearsay is a statement, "other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Defendant's daughter's out of court statement to Harper is, therefore, not admissible to prove that defendant did in fact touch her inappropriately. Nor do any of the exceptions to the hearsay rule apply under the facts of this case. See MRE 803 (hearsay exceptions when the availability of the declarant is immaterial); MRE 803a (tender years exception); MRE 804 (hearsay exceptions when the declarant is unavailable).

evidence of that statement." *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). Accordingly, based on the testimony of defendant's daughter that she did not remember talking to Harper, it would have been proper to impeach her with extrinsic evidence that she had spoken to Harper. However, "a prosecutor may not use an elicited denial as a springboard for introducing substantive evidence under the guise of rebutting the denial." *People v Stanaway*, 446 Mich 643, 693; 521 NW2d 557 (1994). It is improper for a prosecutor to " 'use a statement that directly tends to inculpate the defendant under the guise of impeachment when there is no other testimony from the witness for which his credibility is relevant to the case.' " *People v Shaw*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 313786); slip op at 9, quoting *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997). Such impeachment "should be disallowed when (1) the substance of the statement purportedly used to impeach the credibility of the witness is relevant to the central issue of the case, and (2) there is no other testimony from the witness for which his credibility was relevant to the case." *Kilborun*, 454 Mich at 683.

The central issue in this case was whether or not defendant molested a young girl. The substance of the hearsay statement, i.e. that defendant molested his own four-year-old daughter, was highly relevant to that question; a man who desires to molest his own daughter and does so is surely more likely to behave in such a way with other young girls than are other men. *Watkins*, 491 Mich at 470 (stating that "a defendant's propensity to commit a crime makes it more probable that he committed the charged offense"). Put simply, the statement directly tended to inculpate defendant under the guise of impeachment because it sought to cast defendant as the type of individual who had the propensity to molest young girls.

Furthermore, the proffered basis for the testimony as impeachment, i.e. the need to demonstrate the weakness of defendant's four-year-old daughter's memory, was of de minimis relevancy. First, the child's own testimony consisted largely of her admissions that she did not recall many of the events, and the events she did recount were neither inculpatory nor exculpatory. It is difficult to see how further demonstrating her poor memory was at all probative. Second, none of the statements recounted by Harper in her rebuttal testimony suggested that defendant's daughter recalled aspects of the alleged crime beyond her own rather unremarkable testimony. In other words, it did not impeach any of defendant's daughter's testimony about the events of the night in question. Accordingly, the trial court erred in overruling defendant's objection to Harper's testimony on rebuttal on the grounds that it was proper impeachment.

Having concluded that the admission of Harper's testimony was erroneous, we must now consider whether the error was harmless. See *People v Lukity*, 460 Mich 484, 491-495; 596 NW2d 607 (1999). We conclude that it was not. Defendant was charged with sexually molesting a young girl. Defendant denied the accusations and argued that Voit was the individual who must have assaulted the victim. Both defendant and his wife testified that Voit suggested going to defendant's house with the victim so that he could watch her the next day

while defendant and his family attended the air show.[6]  Additionally, it was uncontested that Voit and the victim were alone at defendant's house from mid-morning until 8:00 p.m., when the victim's mother testified she picked her daughter up.  There were some inconsistencies in the testimony concerning the attempts to contact the victim's mother that day,[7] and as noted, the testing of the male DNA found in the victim's underwear could not be further identified.

The parties' cases-in-chief left the jury with a credibility contest between defendant on the one hand, and the victim and Voit on the other.  However, just before going to deliberate, the jury heard the rebuttal testimony from Harper that defendant's four-year-old daughter told her that she had been molested by defendant.  Even if the trial court had issued a proper limiting instruction informing the jury that they were not to consider Harper's testimony as substantive evidence, it is unlikely that the statement would not have played some part in their resolution of the credibility contest.  "The introduction of [prior un-sworn statements] even where limited to impeachment, necessarily increase the possibility that a defendant may be convicted . . . for despite proper instructions to the jury, it is often difficult for them to distinguish between impeachment and substantive evidence."  *Jenkins*, 450 Mich at 261-262 (quotation omitted).  However, the jury was never expressly instructed that Harper's testimony on rebuttal was solely for impeachment purposes.  The trial court likely determined a limiting instruction was unnecessary because it erroneously found the evidence admissible under MCR 768.27a.  Therefore, the jury was free to use the improperly admitted hearsay as substantive evidence.  There was no instruction to the jury on how to properly evaluate Harper's testimony.[8]

Additionally, the fact that the jury only convicted defendant of one of the two charged counts of CSC-I suggests that they did not wholly believe the victim's testimony.  Accordingly, we cannot discount the likelihood that the testimony that defendant had sexually abused his own daughter likely influenced the jury to conclude that even if it did not fully believe the victim's testimony, defendant was the type of man who sexually abused children making him worthy of punishment even in the face of reasonable doubt as to the charged crime.  "[C]haracter evidence may lead the jury to lower the burden of proof against the defendant, since, even if the guilty verdict is incorrect, no 'innocent' man will be forced to endure punishment."  *People v Allen*, 429 Mich 558; 569; 420 NW2d 499 (1988).  Moreover, the danger was exacerbated by the trial

---

[6] While Voit initially testified that he came up with the idea to go to defendant's house with the victim, he then retracted that statement and testified that he simply agreed to go.

[7] The victim testified that Voit tried to get a hold of her mother but that it took a long time for her to be picked up because there was no phone service.  Voit denied telling the victim there was no service.  The victim's mother denied that Voit contacted her.

[8] The trial court suggested that the general jury instruction on prior inconsistent statements was sufficient to instruct the jury on how to evaluate Harper's testimony.  However, defendant's daughter was impeached based on her lack of memory, not on a prior inconsistent statement.  That is, she testified that she did not remember the statements the prosecutor was confronting her with, but she did not testify to any statements that were inconsistent with the statements the prosecutor was asking her about.

court's failure to give a limiting instruction and its refusal to allow defendant the opportunity to present a surrebutal witness who, according to his trial attorney's offer of proof, would have testified that an investigation failed to substantiate any claim that defendant had sexually assaulted his daughter.[9] It is impossible to know, absent the improper rebuttal testimony, whether the jury would have convicted defendant or whether it would have acquitted him of both charges, but there is a reasonable probability that they would have acquitted him of both. See *Lukity*, 460 Mich at 495-496.

Reversed and remanded for a new trial. We do not retain jurisdiction.


/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto

---

[9] At a status conference, the trial court barred defendant from calling as a witness, an investigator with DHHS who would have testified that defendant's children had been removed following the allegations in this case, but that, after an investigation, defendant's children were returned to his home. When defendant again asked for the opportunity to call this witness after Harper's rebuttal testimony, the trial court stated that "we don't have what you would call rebuttal from the Defense in these matters that I am aware of" and that "I don't believe that is allowed under the rules in criminal cases." Neither the prosecutor nor the trial court made reference to any court rule that bars surrebuttal testimony in a criminal case. There are instances of surrebutal in criminal cases. See *People v Harris*, 261 Mich App 44, 49; 680 NW2d 17 (2004) (finding that the defendant was allowed to cross examine an anonymous informant on surrebuttal after that informant's identity was revealed in rebuttal testimony).