*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DNAUTICA JANAE-MABEL HARRIS,

       Defendant-Appellant.

UNPUBLISHED
March 21, 2024

No. 362385
Kent Circuit Court
LC No. 19-008670-FH

Before: PATEL, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of assault with intent to do great bodily harm less than murder or by strangulation, MCL 750.84 (AWIGBH). The trial court sentenced defendant to 270 days in jail, followed by three years of probation. We affirm.

## I. BACKGROUND

On September 13, 2019, defendant and the victim were involved in a fight in the victim's yard. During the fight, there was a group of women in the victim's yard. When a police officer approached the scene to investigate the yelling he heard, all the women fled, except for the victim and her mother. The officer observed the victim and her mother in the yard and noted that the victim had blood on her left hand and face. The victim was transported to the hospital, where she received seven stiches on her face, three stitches on her left palm, and three stitches on her left middle finger. The emergency room doctor testified that the victim's injuries were inflicted with "a sharp object, as well as potentially a blunt object . . . ."

Shortly after the other women fled, another officer witnessed a vehicle run a stop sign a couple blocks from the victim's house. The officer and his partner initiated a traffic stop and observed two women in the car—defendant was in the backseat with blood on her hands, and the driver of the vehicle was identified as Mykea Ayers. Defendant gave the officers "multiple different names and variations" when she was asked to identify herself. Both women were taken into custody. Two knives were recovered from the backseat of the vehicle. During the investigation, Ayers told one of the officers that defendant told Ayers in the moments after the

-1-

incident that she stabbed the victim. The conversation between Ayers and the officer occurred over the phone and was recorded. Defendant was ultimately charged with one count of AWIGBH.

During trial, the victim and her mother testified that defendant was the only person involved in the fight—the other women watched and recorded the fight. The victim testified that defendant made "at least four" stabbing motions toward her and she was stabbed twice before the other women came into the yard. Although the victim did not see anything in defendant's hands, the victim's mother noticed that defendant was holding something, but she could not tell what the object was. Defendant later sent the victim a message on Facebook stating that she was not the one who cut the victim. Because Ayers was unavailable at trial, the prosecution sought to introduce Ayers' recorded phone conversation with the officer into evidence pursuant to MRE 804(b)(7), but the trial court ruled that it was inadmissible.

Defense counsel called defendant as a witness. Defendant denied stabbing or cutting the victim, denied touching either of the knives recovered from the vehicle, and denied having something in her hands during the fight. Defendant testified that Ayers ran behind her, and defendant felt another pair of hands during the fight. On cross-examination, defendant denied telling Ayers that she stabbed the victim. On rebuttal, the prosecution introduced the telephone recording between Ayers and the officer as impeachment evidence.[1]

---

[1] The trial court allowed the recording to be introduced for impeachment purposes only. Before the recording was played, the trial court gave the following limiting instruction:

> And so my instruction, now evidence in any trial is introduced for specific reasons. And sometimes the distinctions are subtle. But here's my instruction to you. The purpose of this evidence, this tape recorded statement, the prosecutor wants to what we call impeach the credibility of the defendant. So my instruction is to the extent that there are certain statements made by the defendant as described by Ms. Ayers, I want you to consider that only as you judge the credibility of Ms. Harris when she testified and whether you believe her or not believe her, just judging her credibility. I'm asking you to not take it into consideration as to determine whether or not Ms. Ayers' statement was true. And by that I mean to the extent that the defendant may have made some kind of an admission, it doesn't go to whether she actually committed the crime. It only goes to whether or not you believe her.

> I realize this distinction is subtle, so you're nodding your head. I think you do appreciate and understand the distinction. But please remember this is the only reason you're hearing this is so to help you judge the credibility of Ms. Harris' testimony of yesterday.

Before the jury deliberated, the trial court gave the following instruction:

> You [have] heard evidence that before trial [defendant] made a statement that may be inconsistent with her testimony here in court. You may consider an inconsistent

The jury found defendant guilty of AWIGBH. Defendant moved for a new trial, arguing that the impeachment evidence was improperly admitted. The trial court denied the motion. Defendant was sentenced as described. This appeal followed.

## II. ANALYSIS

Defendant argues that the phone recording was inadmissible hearsay and thus she is entitled to a new trial. We disagree.

We review the trial court's decision to admit evidence for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "An abuse of discretion occurs when the result is outside the range of principled outcomes." *People v Brown*, 279 Mich App 116, 144; 755 NW2d 664 (2008). Preliminary questions of law, such as whether a rule of evidence permits the admission of evidence, are reviewed de novo. *Lukity*, 460 Mich at 488. "[I]t is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *Id*. We also review a trial court's decision on a motion for new trial for an abuse of discretion. *Brown*, 279 Mich App at 144.[2]

Extrinsic evidence of a prior inconsistent statement is admissible to impeach a witness. MRE 613(b). "The general rule is that evidence of a prior inconsistent statement of the witness may be admitted to impeach a witness even though the statement tends directly to inculpate the defendant." *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997). However, our Supreme Court established a "very narrow rule" in *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994), "that the impeachment should be disallowed when (1) the substance of the statement purportedly used to impeach the credibility of the witness is relevant to the central issue of the case, and (2) there is no other testimony from the witness for which his credibility was relevant to the case." *Kilbourn*, 454 Mich at 683. The purpose of this narrow exception is to prevent a party from deliberately calling a witness in order to elicit a denial "as a means of introducing a highly prejudicial 'admission' that otherwise would have been inadmissible hearsay." *Stanaway*, 446 Mich at 693.

In *Stanaway*, the defendant was charged with three counts of third-degree criminal sexual conduct. *Id*. at 650-651. At trial, the prosecution called the defendant's nephew to testify as to

---

statement made before trial only to help you decide how believable the witness's testimony was when testifying here in court.

[2] Defendant argues that this issue is a constitutional violation of her right to confrontation and thus it should be reviewed de novo. See *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). However, defendant's brief on appeal does not include any arguments that the witness was not unavailable or that defendant did not have an opportunity to cross-examine the witness. Instead, defendant reargues the issue that she brought before the trial court—the impeachment evidence was inadmissible and the trial court erred by admitting the evidence. Defendant has abandoned the right-to-confrontation issue by failing to make an argument in support of her position. See MCR 7.212(C)(7); *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

whether the defendant admitted to the nephew that he had sexual relations with the minor victim—the nephew denied that the defendant made the admission. *Id*. at 688-689. After the nephew's denial, the prosecutor called a police officer to testify that the nephew told him about the defendant's admission. *Id*. at 690. The Court determined that the officer's impeachment testimony was improperly admitted because the only relevance of the nephew's testimony

> was whether he made the statement regarding his uncle's alleged admission. The witness had no direct knowledge of any of the alleged incidents and was out of town at the time they would have occurred. While prior inconsistent statements may be used in some circumstances to impeach credibility, MRE 613, this was improper impeachment. The substance of the statement, purportedly used to impeach the credibility of the witness, went to the central issue of the case. Whether the witness could be believed in general was only relevant with respect to whether that specific statement was made. This evidence served the improper purpose of proving the truth of the matter asserted. MRE 801.
>
> . . . Likewise, a prosecutor may not use an elicited denial as a springboard for introducing substantive evidence under the guise of rebutting the denial. Here the prosecutor used the elicited denial as a means of introducing a highly prejudicial "admission" that otherwise would have been inadmissible hearsay. [*Id*. at 692-693 (citation omitted).]

In *Kilbourn*, the defendant was charged with two counts of AWIGBH related to shots fired into the home of the defendant's neighbors after a neighbor contacted the police to report that her husband observed several people fighting at the defendant's residence. *Kilbourn*, 454 Mich at 678-679. The prosecution called the defendant's father in the State's case in chief. *Id*. at 680. The defendant's father testified as to the events leading up to the police being called. *Id*. The prosecutor also asked the defendant's father whether he told a detective that the defendant had been the person who fired shots at their neighbor's house—the defendant's father maintained he did not recall such a conversation. *Id*. Later, the prosecution called the detective in its case in chief. On redirect examination, the detective testified that the defendant's father told him that the defendant was the person who fired shots at their neighbor's house. *Id*. at 680-681. Relying on *Stanaway*, this Court concluded that the detective's testimony was improper impeachment evidence because the statement was hearsay and it " 'did not become admissible for impeachment purposes merely because the prosecutor had previously elicited a denial of the purported statement[s] by [the defendant's father].' " *Id*. at 682. But our Supreme Court concluded that the narrow two-part *Stanaway* rule did not apply, explaining:

> Although the substance of the statements used to impeach the credibility of the witness were indeed relevant to a central issue of the case, the second prong of the test was not met because there was other relevant testimony from the witness for which his credibility was relevant. [The defendant's father] testified about a number of events that took place before the shooting, and indeed was a key actor in some of these events.

* * *

Here, there was at least one direct conflict between [the defendant's father's] testimony at trial and that of another witness. [The defendant's father] testified that when he phoned [the neighbor] he only asked the [neighbors] to contact him before calling the police, and that he made no threats. [The neighbor], on the other hand, testified that [the defendant's father] had made a threatening phone call to her. We find that the officer's testimony was admissible, because it could properly be used to impeach the credibility of [the defendant's father]. [*Id.* at 683-684.]

Defendant argues that this case falls under the narrow *Stanaway* rule. But plaintiff argues, and we agree, that this case falls under the general *Kilbourn* rule. Defendant's testimony went beyond the central issue in this case: the identity of who stabbed the victim. For example, defendant testified that the victim invited defendant over to the victim's house to fight, but the victim denied this allegation. Also, the victim and her mother testified that it was only defendant and the victim involved in the fight. But defendant testified that there was "another pair of hands" in the fight. Additionally, the victim and her mother testified that defendant had an object in her hand during the fight, but defendant denied this allegation. Given these material factual disputes, defendant's credibility was pertinent on other grounds and the impeachment evidence was not excludable under *Stanaway*. See *Kilbourn*, 454 Mich 683. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for a new trial.

Affirmed.

/s/ Sima G. Patel
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney