# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BERNARD JOHN CRAIGE,

        Defendant-Appellant.

UNPUBLISHED
July 30, 2015

No. 321233
Gratiot Circuit Court
LC No. 13-006802-FC

Before: MARKEY, P.J., and MURPHY and STEPHENS, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree criminal sexual conduct ("CSC I"), MCL 750.520b (sexual penetration with one of multiple variables), and two counts of CSC III, MCL 750.520d(1)(d) (other person related by blood or affinity to the third degree and sexual penetration occurs). The trial court sentenced him to 15 to 50 years' imprisonment for the CSC I conviction and 7 to 15 years' imprisonment for both CSC III convictions. He appeals as of right. For the reasons stated below, we remand for a *Ginther*[1] hearing.

## I. BACKGROUND

JS, defendant's daughter, testified that defendant had sexually abused her from about the time she was 12 years old until she was 17 years old. She testified that the last instance occurred in a barn on an abandoned farm, where defendant had taken her on his motorcycle. JS testified that afterward she told her stepmother, Nancy Craige, about the abuse, and that her stepmother said that she "knew there was something wrong." According to JS, Nancy told her to get evidence that defendant was abusing her.

JS downloaded a recorder on her phone and recorded two conversations that she had with defendant. Although the conversations do not explicitly refer to sexual relations, JS testified that they were indeed discussing sexual relations, and that defendant was gesturing to his "private parts" during the conversations. In one conversation, JS told defendant, "[I]t can't be like last time," to which defendant replied, "Your ass dragged the ground, man."

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-1-

JS reported the abuse to the police. She led officers to the barn where she alleged that defendant had assaulted her. Police searched for fingerprints and DNA evidence in specific areas that JS had told them that she or defendant had touched while they were in the barn. Although the police recovered DNA and a fingerprint, they were determined to be unsuitable for comparison.

A police officer contacted defendant, who denied sexually abusing JS. The officer testified that defendant, without prompting, said that he knew that JS had recorded their conversations, and defendant tried to explain the "ass dragging" comment. According to the officer, defendant said that he was referring to the fact that the foot pegs on his motorcycle had been broken, and that JS was "dragging her ass by riding without foot pegs . . . ." Defendant allegedly told the officer that he and JS had visited the farm to see if the house could be a "fix-up" for JS and her boyfriend.

JS also told police that defendant had a scar on his penis and that he was circumcised. Defendant was ordered by the court to have his penis photographed by police in an erect state. Although defendant was unable to achieve an erection, his flaccid penis was photographed, and the photograph showed that he was circumcised and that he had a scar.

At trial, defendant denied sexually abusing JS, and claimed that she fabricated the allegations after he would not let her live with her boyfriend. He reiterated his claim that they had visited the abandoned farm because he thought it could be a property for JS and her boyfriend to buy. He further explained that he was a licensed contractor and could have helped repair the property. Defendant denied telling police that he knew that JS had recorded him, explaining as follows:

> I think [the officer] mentioned to me something about was I calling her names and saying something. I said—said something about her, she's so short her butt is dragging the ground. She was going to jump up on the motorcycle foot boards . . . and they're very dangerous, they're on a swivel-type deal, and so if she was to jump on it improperly, she would go right down and bite the dirt . . . .

Defendant also testified that a dog bit his penis when he was 12 years old. Finally, defendant presented four character witnesses, two siblings of JS and two of his former girlfriends, who opined that JS is untruthful.

## II. DNA AND FINGERPRINT EVIDENCE

Defendant presents multiple arguments as to why the DNA and fingerprint evidence should not have been admitted at trial. Because defendant failed to object to the evidence at trial, this issue is unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007).[2] Unpreserved issues are reviewed for plain error affecting defendant's

---

[2] Plaintiff asserts that defendant waived this issue because he relied on the evidence at trial. Plaintiff calls attention to defendant's opening statement, where he said that the forensic

substantial rights. *People v Vaughn*, 491 Mich 642, 654; 821 NW2d 288 (2012). To avoid forfeiture of an unpreserved issue, defendant must show plain, outcome-determinative error. *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999).

Defendant first contends that the evidence was not relevant because, given its inconclusiveness, it "proved nothing" other than "that a human being, at some time in the past, was present at the farmhouse." MRE 401 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 402 provides, in turn, that "[e]vidence which is not relevant is not admissible."

We agree with defendant that the admission of the forensic evidence was irrelevant. However, reversal is not warranted where the admission of irrelevant evidence was not outcome determinative. *People v Grant*, 445 Mich 535, 553-554; 520 NW2d 123 (1994). Undoubtedly, the prosecution's purpose in admitting the DNA and fingerprint evidence was to establish that defendant was in the barn with JS and that a sexual act occurred. Defendant's presence in the barn was not a contested issue. Defendant admitted that he was in the barn with JS. The issue in dispute was whether a sexual act occurred while defendant and JS were in the barn. The DNA evidence was of no consequence to this issue because the results were inconclusive and could not be matched to defendant. The jury rendered its verdict based primarily on its assessment of credibility of JS and defendant. Neither party benefitted from, nor was substantially disadvantaged by, the admission of irrelevant evidence in this case. We therefore conclude that the evidence was not decisive to the outcome of the trial and its admission did not amount to plain error.

Defendant also argues that the evidence was cumulative because he admitted that he had been at the barn with JS. Defendant cites no caselaw or rule of evidence on this point. The mere statement of a position without citation to relevant supporting authority constitutes failure to argue the merits of the allegation. *People v Harlan*, 258 Mich App 137, 140; 669 NW2d 872 (2003) citing *People v jones (On Rehearing)*, 201 Mich App 449, 456-457; 506 NW2d 542 (1993). Therefore, the issue is not properly presented for review.

Defendant also asserts that the evidence was inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice under MRE 403. Defendant calls particular attention to this Court's decision in *People v Coy*, 243 Mich App 283; 620 NW2d 888 (2000). In that case, the victim was found stabbed to death, and police found blood on a knife and a doorknob. *Coy*, 243 Mich App at 285. At trial, a serologist opined that the blood was actually a mixture of blood from more than one person. *Id*. at 292. The serologist "denied that

---

investigation conducted by police revealed "[n]o fingerprints, no DNA results, nothing. Nothing to go along with what occurred supposedly at this site." However, we read these remarks as a preemptive attack on the significance of the forensic evidence, not affirmative approval of it. Defendant was not arguing that the forensic evidence proved his theory of the case; rather, he was arguing that the forensic evidence did not prove the prosecutor's theory of the case. Furthermore, the evidence was introduced by the prosecutor, not defendant. Therefore, this issue was not waived by defendant's opening statement.

any of the test results enabled her to testify positively that the blood on the broken knife blade and the door knob belonged to either defendant or the victim." *Id*. at 292-293. However, she also testified that neither could the victim or the defendant be excluded as contributors to the mixture of blood. *Id*. at 293. The serologist did not provide a statistical analysis regarding the likelihood that any DNA could have come from another person. *Id*. at 293-294. This Court held that the evidence was inadmissible under MRE 702 because, without the statistical analysis, the serologist's "testimony concerning the potential match between defendant's DNA and the DNA contained in the mixed blood samples found on the knife blade and the doorknob was insufficient to assist the jury in determining whether defendant contributed DNA to the mixed sample." *Id*. at 301. The Court also held that the evidence was inadmissible under MRE 403. *Id*. at 302. It reasoned that the evidence had minimal probative value without a statistical analysis and that the jurors may have given undue weight to the serologist's testimony regarding a potential DNA match. *Id*.

Relying on *Coy*, defendant argues that the DNA and fingerprint evidence was unfairly prejudicial because, unlike *Coy*, in this case there was not even testimony that there was a potential match. However, *Coy* is inapposite. In that case, a serologist opined that it was possible that the DNA found in the mixed blood belonged to defendant. In the present case, forensic evidence was insufficient to even compare to any known samples, and there was no expert testimony regarding a match or possible match. Rather, the mere fact that DNA and a fingerprint were found in the specific locations that JS claimed that she and defendant had touched served to corroborate her account.

Defendant also argues that the forensic evidence had no probative value since it only proved that humans had been in the barn at some point. Defendant does not provide a cogent argument for why the evidence was unfairly prejudicial. For evidence to be unfairly prejudicial under MRE 403, it must "adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995) (quotation marks and citation omitted). Here, there is no suggestion that the evidence injected such extraneous considerations.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next raises three assertions of ineffective assistance of counsel. Defendant's first and second assertions were properly raised in a motion to remand, although this Court denied that motion without prejudice. Defendant's third assertion is raised for the first time in his brief, and is therefore unpreserved. Even though defendant's first two claims were properly raised, because no *Ginther* hearing was held, this Court's review is limited to errors apparent on the record. *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003). Because the third claim is unpreserved, it is also reviewed for errors that are apparent on the record. *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Findings of fact are reviewed for clear error, while determinations of constitutional law are reviewed de novo. *Id*.

-4-

The Sixth Amendment to the United States Constitution and Article I, § 20 of the Michigan Constitution guarantee the right to effective assistance of counsel for criminal defendants. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish that his counsel did not render effective assistance and therefore that he is entitled to a new trial, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (internal quotation marks and citation omitted).

Defendant first argues that his trial counsel was ineffective for failing to move to exclude the forensic evidence recovered at the barn. We disagree. "A defense attorney must enjoy great discretion in the trying of a case-especially with regard to trial strategy and tactics." *Pickens*, 446 Mich at 330. A defendant must overcome the strong presumption that defense counsel employed sound trial strategy. *Vaughn*, 491 Mich at 670. Here, defendant cannot overcome the presumption that it was sound trial strategy for defense counsel to rely on the inconclusiveness of the DNA and fingerprint test results to argue that the lack of physical evidence corroborated defendant's version of events in the barn and supported that a sexual assault did not take place.

Defendant next argues that his trial counsel failed to adequately prepare for trial and defend him. Defendant first calls attention to the character witnesses, three of whom provided affidavits that were attached to defendant's motion to this Court to remand stating that they could have provided information or testimony regarding specific instances of JS's untruthfulness. Although such evidence would not have been admissible to prove JS's character for untruthfulness, it could have been used to cross-examine JS. MRE 608. Nonetheless, defendant has failed to identify any specific instances of JS's untruthfulness. The affidavits only vaguely refer to such instances. It is consequently impossible for us to determine whether such material for cross-examination would have been permissible and useful to defendant's defense. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). In addition, MCR 7.211(C)(1) requires that motions to remand be "supported by affidavit or offer of proof *regarding the facts to be established at a hearing*." (Emphasis added). The averments in the affidavits about specific instances do not satisfy the court rule because they do not set forth the facts to be established.

Defendant next calls attention to several letters that were attached to the presentence investigation report in support of defendant. The letters are from various friends and family members, and they generally state that JS is a liar and that she had threatened to get defendant in trouble, as she "knows how to get men in trouble."[3] Defendant argues that his trial counsel

---

[3] JS had previously accused her stepfather of molesting her. She testified at his trial and he was convicted.

should have called these writers as witnesses. Although it appears from the letters that these witnesses indeed could have provided helpful testimony for defendant, it is not apparent to us that counsel rendered ineffective assistance. Simply put, there may have been good reasons for not calling these writers as witnesses. Defendant has not overcome the presumption that his trial counsel was effective.

Defendant additionally attached an affidavit from his nephew to his brief on appeal. His nephew avers that trial counsel first subpoenaed him to be a witness, but later notified him without explanation that he would not be called. He states that he would have testified that he "was present when [JS] told her father that she 'knew how to get men in trouble.' " However, we will not consider affidavits that are attached to a brief, as they are not a part of the lower court record. *Seals*, 285 Mich App at 20-21.

Nevertheless, we find that the affidavit from Nancy that defendant attached to his motion to remand warrants a *Ginther* hearing. Nancy denied that she said that she "knew all along" that defendant was abusing her when JS first alleged the abuse to her. Instead, she states, she responded, " 'are you sure?' " Nancy also averred, " . . . I would have testified that I heard the victim threaten the Defendant that she was 'going to get him for this' when he told her she could not live with her boyfriend." Nancy further stated, "I would have testified that I heard the victim, prior to her disclosing Defendant's abuse, state that she was afraid her step-father would get out of prison and hurt her because she did not tell the truth regarding the allegations that he sexually abused her." In addition, like the other affiants, Nancy stated that she could have testified to specific instances of JS's untruthfulness. According to Nancy, defendant's counsel "advised [her] to not testify because of some instances of domestic violence in [her] early years of being married to the Defendant/Appellant." She also averred that counsel "told [her] to not answer the door when an officer appeared to serve [her] with a subpoena."

In addition, Nancy wrote a letter that was attached to the presentence investigation report. In it, she stated that defendant often told people the story of how he was bit by a dog on his penis. Other letters echoed this assertion.

It appears that Nancy's proposed testimony would have been very helpful to defendant. First, Nancy denies saying that she "knew all along" that defendant was abusing JS, but rather was doubtful of JS's accusations. This testimony would have contradicted JS's testimony and it would have communicated to the jury that JS's stepmother, someone who had helped raise JS and who knew her well, was distrustful of her.

Nancy also averred that she "heard [JS] threaten the Defendant that she was 'going to get him for this' when he told her she could not live with her boyfriend." Although at first blush this statement would seem to be hearsay, it appears that it would have been admissible as a statement of JS's then-existing state of mind under MRE 803(3).[4] This testimony would have corroborated

---

[4] That subrule provides as follows:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental

defendant's contention that JS fabricated the allegations against him out of anger after he would not let her live with her boyfriend. Although defendant testified to the same effect, corroboration undoubtedly would have been helpful.

Finally, Nancy averred that JS admitted that she lied regarding being sexually abused by her stepfather. Again, although JS's statement would seemingly be hearsay, it may have been admissible under MRE 803(3). If admissible to prove the truth of the matter asserted, JS's statement would have shown that she had falsely accused a family member of sexual abuse in the past. At the very least, it is a prior inconsistent statement that would have been admissible to impeach JS's credibility. *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997) ("The general rule is that evidence of a prior inconsistent statement of the witness may be admitted to impeach a witness . . . .").

That being said, it is unclear why trial counsel did not call Nancy as a witness. In her affidavit, she makes vague allusions to "instances of domestic violence." It is unclear what these instances entailed.[5] Nonetheless, MCL 768.27b provides that evidence of domestic violence may be admissible against a defendant in certain circumstances:

> (1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

> (2) If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered, to the defendant not less than 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown.

> * * *

> (4) Evidence of an act occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that admitting this evidence is in the interest of justice.

The statute defines "domestic violence" to include "[c]ausing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress." MCL 768.27b(5)(a)(*iii*). Thus, since this case involved accusations of "domestic violence," evidence of previous acts of domestic violence may have been admissible against defendant.

feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

[5] Defendant's criminal history as contained in the presentence investigation report does not show any convictions or allegations of domestic violence.

Even so, there are reasons to believe that the statute would not have applied in this case. First, the record does not contain notice from the prosecutor as required by MCL 768.27b(2). Second, Nancy averred that the "instances" occurred at the beginning of her marriage to defendant, which appears to have been more than 10 years before the charged offense,[6] and thus could have been precluded under MCL 768.27b(4). Therefore, it seems that trial counsel's purported reason for not calling Nancy was misconceived and not reasonable strategy.

We believe that if Nancy's proposed testimony was credited by the jury, there is a reasonable probability that the outcome of the trial would have been different. Therefore, we find that remand for a *Ginther* hearing is necessary.

Finally, defendant argues that his counsel rendered ineffective assistance by failing to ensure that a drawing by JS was admitted as an exhibit at trial. JS drew a picture of defendant's penis at the prosecutor's request. The drawing was shown to the jury and the prosecutor referred to it as a proposed exhibit. However, the drawing was not admitted. During the jury's deliberations, it sent out a note requesting to see the drawing if it had been admitted. The trial court declined since it was not offered or admitted.

Defendant has not overcome the presumption that his trial counsel had a strategic reason for not moving to admit JS's drawing as an exhibit. The drawing is not in the record and it is therefore uncertain whether it was favorable to defendant's case. That is, it is unclear whether JS's depiction of defendant's penis matched the photograph of his penis that was taken and admitted as an exhibit at trial. Given that this Court's review is limited to facts apparent on the record, there simply is nothing in the record to either support or contradict defendant's claim.

Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Cynthia Diane Stephens

---

[6] Defendant and Nancy were married for more than 30 years.