*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
November 9, 2021

v

No. 350653
Livingston Circuit Court
LC No. 18-025380-FH

BRADLEY MICHAEL NOWAK,

Defendant-Appellant.

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

A jury found defendant guilty of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (sexual penetration involving force or coercion), and fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (sexual contact involving force or coercion). The trial court subsequently sentenced defendant to serve prison terms of 2.5 to 15 years for the CSC-III conviction and one to two years for the CSC-IV conviction. After filing his appeal by right in this Court, defendant filed in the trial court a motion for new trial or, alternatively, a hearing pursuant to *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Defendant raised numerous issues of purported ineffective assistance of counsel that he contends, when taken together cumulatively, warrant a new trial. After holding a *Ginther* hearing, the trial court denied defendant's motion. We affirm.

## I. BACKGROUND

This case involves a sexual assault on the night of June 2, 2018. Defendant, the victim, and two friends, HK and TC, as well as several others, were at HK's house watching a movie and drinking alcohol in the basement. Some of them were underage, including the victim and HK, who were both 16 years old, and defendant, who was 19 years old. Defendant and the victim had previously been in a dating relationship together, but, at the time of the offense, they were no longer in this relationship. They were still friends and had the same circle of friends. The house was owned by HK's parents, and the parents were home but upstairs. Everyone was on a U-shaped sectional couch. The victim and defendant were on one side of the "U," and HK and TC were on the other side. During the course of the movie, the victim and defendant went under the same

-1-

blanket. The victim eventually decided to sleep, and she remained on the couch. Before sleeping, she and defendant kissed. Defendant was behind the victim when the victim went to sleep. Although not entirely clear, it appears that HK and TC fell asleep as well.

The victim testified that, sometime after this, as she was sleeping, defendant moved the victim's leg, held it down with his own leg, groped the victim, pulled down the victim's pants, and had sexual intercourse with her. The victim woke up, "froze," and was too scared to move or speak up as this occurred. She testified that she did not consent to defendant's actions. The victim testified that defendant eventually loosened his grip, and she was eventually able to roll off the couch and away from defendant. The victim immediately woke up HK, took her to the bathroom, and told HK what had happened. Testimony differed on what transpired next, but defendant ultimately left the house. The victim told her school choir director, CH, in September about the offense. CH informed the principal, and the authorities were contacted.

Defendant's trial counsel advanced two alternative theories at trial: (1) defendant did not have sexual intercourse with the victim, and, (2), if he did, it was consensual. The jury found defendant guilty of both counts of CSC-III and CSC-IV. Defendant challenges his trial counsel's representation, arguing that he was ineffective for advancing the two "inconsistent" theories; for failing to object to hearsay testimony, vouching or bolstering testimony, and other-acts evidence; for eliciting unfairly prejudicial testimony involving a prior uncharged and unrelated act of sexual misconduct involving defendant; and for failing to interview HK's mother, SK, or to conduct a thorough investigation of the basement. Defendant contends that the cumulative effect of these errors warrants a new trial. We find no merit to each of defendant's contentions.

## II. ANALYSIS

## A. STANDARD OF REVIEW

To the limited extent that defendant challenges the admission of evidence, these challenges are not preserved for appeal. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001); MRE 103(a)(1). Defendant either failed to object to the evidence he challenges on appeal or objected on grounds different from those raised on appeal. Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. To affect substantial rights, the error must be prejudicial. *Id*. An error is prejudicial if the error "affected the outcome of the lower court proceedings." *Id*. The defendant bears the burden of showing prejudice. *Id*. Even if prejudice is shown, the reviewing court should reverse only if the "plain, forfeited error resulted in the conviction of an actually innocent defendant" or if the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).

The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493

Mich 38, 47; 826 NW2d 136 (2012). Findings of fact are reviewed for clear error while questions of constitutional law are reviewed de novo. *Id.* There is a strong presumption that trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks omitted), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984), and a defendant has a "heavy burden" to show otherwise, *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (quotation marks and citations omitted). For an ineffective assistance of counsel claim to be successful, a defendant must show: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

Furthermore, examination of counsel's actions must be "highly deferential" and without the benefit of hindsight, *Strickland*, 466 US at 689, and there is a "strong presumption" that counsel's actions arose from "sound trial strategy," *Trakhtenberg*, 493 Mich at 52. This Court must not "substitute [its] judgment for that of counsel on matters of trial strategy . . . ." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 US at 691.

## B. HEARSAY AND VOUCHING OR BOLSTERING

Defendant's trial counsel was not ineffective for failing to object to the complained-of testimony because the testimony was either not hearsay or else fell within an exception.

Hearsay is defined to be "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless the rules of evidence allow for an exception. MRE 802. A statement is not hearsay if it is a prior statement by a witness or an admission by a party-opponent. MRE 801(d)(1) and (2). MRE 801(d) provides:

(1) *Prior statement of witness*. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person; or

(2) *Admission by party-opponent*. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, except statements made in connection with a guilty plea to a misdemeanor motor vehicle violation or an admission of responsibility for a civil infraction under

laws pertaining to motor vehicles, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy.

MRE 803(2) provides that the following is not excluded by the hearsay rule, even though the declarant is available as a witness:

> ***Excited utterance***. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Defendant challenges portions of HK's testimony. HK testified that the victim woke HK up, took HK to the bathroom, and told HK that defendant "raped" the victim. Given that this happened immediately after the victim was assaulted, it fell under the excited utterance exception. MRE 803(2). Similarly, the victim's statements to HK in HK's bedroom, which were made after defendant left, about defendant having "sexually assaulted" the victim, fell under this exception because the statements were made by a startling event, i.e., the sexual assault, and while still under the excitement caused by the event. MRE 803(2). Although some amount of time had passed, it appears to have been fairly short, and, given the severity of the event, i.e., sexual assault, the victim was still under the excitement of the situation.

Defendant also challenges portions of TC's testimony in which the prosecutor asked TC about a meeting that was held by SK the day after the sexual assault. TC explained that, when SK "found out [the next morning], she just wanted to know what was going on, so we just told her . . . what we thought was happening and . . . it apparently turned out something different." He testified that "everyone was [there] except for" defendant. He testified that SK did not "tell [him] what to do or what to say." However, he acknowledged that he had told police "that SK told everyone we need to protect [defendant] and stand with him . . . ." He acknowledged telling police that defendant was at this meeting and said "he did not do anything." He further acknowledged telling police that HK "now believes [defendant] because SK told everyone to believe" defendant. This testimony was admissible. The state may impeach its own witness, MRE 607, and the prosecutor was doing so with TC's trial testimony that differed from statements given to police. "The general rule is that evidence of a prior inconsistent statement of the witness may be admitted to impeach a witness even though the statement tends directly to inculpate the defendant." *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997). Although there is a narrow exception to this rule, see *id*. at 683, it does not apply.

Defendant further challenges CH's testimony about the victim's telling CH that defendant had "raped" her during the summer. However, this was admissible as a prior consistent statement of a witness under MRE 801(d)(1). This rule allows for admission of a statement made by the declarant when the declarant testifies at trial and is subject to cross-examination, and the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." MRE 801(d)(1).

Defendant's defense was that the victim was fabricating her allegations against him. The victim's statements to CH were admissible to show that the victim did not recently fabricate her testimony against defendant but had made consistent statements to CH a few months after the sexual assault.

Defendant challenges an e-mail that was referenced by another witness, CR, in his testimony. Specifically, defendant challenges the portion of the e-mail referenced by CR which said that, before the victim arrived, defendant told CR "[t]hat he wanted to get [the victim] a few beers and try to sleep with" the victim. This was admissible as a statement against a party opponent, i.e., defendant. MRE 801(d)(2). Defendant also challenges CR's testimony acknowledging that he told police that another person, KK, had told him that the victim "was raped last night." The prosecutor asked the question, "So [KK] told you [the victim] was raped last night, is that correct?" When trial counsel objected, the prosecutor stated that this was not offered to show that the sexual assault had happened but, rather, to show when the victim had informed others of the assault. This was not hearsay because it was offered for something other than the truth of the matter asserted. MRE 801(c). It was also admissible under MRE 801(d)(1).

Defendant challenges testimony from another witness, AB, who testified that defendant told her that the victim claimed defendant had "raped" her. Although defendant's statements were admissible as a statement against a party opponent, MRE 801(d)(2), the victim's statements *to* defendant constituted hearsay within hearsay and must be admissible under an exception. MRE 801(d)(1) applies to the victim's statements to AB. Additionally, the victim's statements were admissible because they were offered only as corroboration of the victim's direct testimony and not for their substantive value. See *People v Gursky*, 486 Mich 596, 621; 786 NW2d 579 (2010) (stating that "the prosecutor relied on [the inadmissible hearsay] testimony only as corroboration for [the child victim]'s direct testimony, and did not admit the testimony for its substantive value").[1] Given that the challenged testimony was admissible, there was no error in the prosecutor's use of the information in his questioning.

Defendant contends that, through the admission of the inadmissible hearsay, there was improper vouching or bolstering because witnesses repeatedly testified to what the victim told them. However, as previously discussed, the complained-of testimony was either not hearsay or was admissible under an exception. Defendant cites *People v Douglas*, 496 Mich 557; 852 NW2d 587 (2014), for support, but it offers none. That case involved clear bolstering when various witnesses testified that the child victim was being truthful and had not been coached. See, e.g., *id*.

---

[1] We also note that, even if it was erroneous for witnesses to reference what the victim told them about the offense, these errors would not have affected the outcome of the trial. The victim testified about the sexual assault, and any statements made to other witnesses were merely cumulative. *Gursky*, 486 Mich at 623 (stating that the inadmissible hearsay testimony was cumulative to the child victim's testimony); *People v Bartlett*, 231 Mich App 139, 159-160; 585 NW2d 341 (1998) (stating that there was no prejudice in the admission of improper hearsay from one police officer "because the jury heard the same information, absent defendant's objection, from another [police] officer"); *People v Crump*, 216 Mich App 210, 212; 549 NW2d 36 (1996) (stating that statements challenged on hearsay grounds "were cumulative evidence; the victim testified at trial to essentially the same facts as contained within the medical statements").

at 583-584. This did not occur in the present case. Additionally, although it is true that "the prosecution cannot vouch for the credibility of a witness 'to the effect that [the prosecution] has some special knowledge concerning a witness' truthfulness,' " *People v Jackson*, 313 Mich App 409, 426; 884 NW2d 297 (2015), this also did not occur.

Therefore, because the challenged testimony was not erroneously admitted, trial counsel was not ineffective for failing to raise objections because there is no duty to make a meritless or futile objection. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

## C. RISK OF UNFAIR PREJUDICE

Defendant's trial counsel was not ineffective for eliciting testimony from CR about the e-mail and allegations of criminal sexual conduct by defendant against a minor because this was done in order to attack CR's credibility and show bias against defendant.

Relevant evidence is generally admissible. MRE 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "In this context, prejudice means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). Rather, "[u]nfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

The challenged testimony concerned the e-mail that CR had sent to police in December 2018. Trial counsel cross-examined CR and elicited testimony about allegations within the e-mail that defendant had sex with a minor. Although defendant contends that there was no possible justifiable strategy in doing this, the record belies this contention. Trial counsel explained at the *Ginther* hearing that CR "was saying . . . increasingly, in my opinion, ridiculous things. I thought it was farcical the things that he kept continuing to say." Therefore, trial counsel "elicited testimony from him regarding the stuff that was in his e-mail" in order to show "how ridiculous his increasingly fantastic claims were . . . ." This was demonstrated at trial when trial counsel asked CR, "And so would it shock you that [the minor] has testified under oath that she never had sex with [defendant]?"

Therefore, trial counsel did not elicit this testimony to show it happened and was true; rather, trial counsel was doing the exact opposite. He elicited this testimony to show the jury what trial counsel believed to be untrue claims that CR made in this e-mail. Trial counsel did this in an attempt to attack witness credibility and show bias against defendant. Trial counsel explained that he had attempted to show the jury that CR failed to give any of this information to police either at the time of the offense or when he spoke to police, which, in trial counsel's opinion, reduced credibility and showed bias. CR had spoken to police in October but did not send the e-mail until December, and trial counsel attempted to emphasize this delay to the jury. Accordingly, contrary to defendant's contentions, such actions evidenced sound trial strategy. This Court will not

second-guess trial strategy. The fact that this strategy may not have ultimately been successful does not make trial counsel ineffective.

## D. OTHER-ACTS EVIDENCE

The victim's testimony about prior domestic violence perpetrated by defendant was properly elicited because such evidence is explicitly permissible by statute and does not constitute impermissible other-acts evidence under MRE 404(b). Further, defendant's trial counsel was not ineffective for failing to object to the victim's testimony about prior domestic violence perpetrated by defendant because such evidence is explicitly permissible by statute and does not constitute impermissible other-acts evidence under MRE 404(b).

Although trial counsel objected to the complained-of testimony, it was on relevancy grounds and not on the grounds that it constituted improper other-acts evidence. Therefore, this issue is unpreserved. *Aldrich*, 246 Mich App at 113; MRE 103(a)(1). Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

However, MCL 768.27b explicitly addresses cases in which the defendant is accused of sexual assault:

(1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

* * *

(6) As used in this section:

(a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:

(*i*) Causing or attempting to cause physical or mental harm to a family or household member.

(*ii*) Placing a family or household member in fear of physical or mental harm.

(*iii*) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.

(*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(b) "Family or household member" means any of the following:

* * *

(*iv*) An individual with whom the person has or has had a dating relationship. As used in this subparagraph, "dating relationship" means frequent, intimate associations primarily characterized by the expectation of affectional involvement. This term does not include a casual relationship or an ordinary fraternization between 2 individuals in a business or social context.

The victim testified that she and defendant had a prior relationship that had "ended pretty badly" because they "fought a lot" and because "[i]t was a pretty abusive relationship." She explained that defendant "would get angry," and "once he slapped me." Later on, the victim testified that, during their relationship, she and defendant had been sexually active with each other but that, when she would refuse to have sex with defendant, he would get upset. She also testified that she and defendant had a fight before prom, that defendant did not want to go, and that he told the victim "that the only way we were going to go is if I had sex with him three times whenever he wanted." The victim did not agree to this, and they broke up. The victim continued to explain the nature of the prior abusive relationship: "He had slapped me to get me to shut up and he also slammed his brakes so the seat belt cut into my neck when he didn't want me to talk anymore."

For purposes of MCL 768.27b, the victim was a "family or household member" because she was engaged in a dating relationship with defendant. See MCL 768.27b(6)(b)(*iv*). Additionally, her testimony involved domestic violence because it involved occurrences of physical and mental harm to her; occurrences in which she was placed in fear of physical or mental harm; occurrences in which defendant arguably attempted to force her to engage in involuntary sex based on duress, e.g., going to prom; and occurrences in which defendant made the victim feel frightened, intimidated, or threatened. See MCL 768.27b(6)(a), (b). Defendant's MRE 404(b) analysis is, therefore, inapposite. The testimony was admissible, and trial counsel had no duty to make a meritless or futile objection. See *Putman*, 309 Mich App at 245.

## E. INVESTIGATION

Defendant's trial counsel was not ineffective for failing to investigate or call SK as a witness because it was a matter of trial strategy.

"Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). The standards that apply to an ineffective assistance of counsel claim "require no special amplification in order to define counsel's duty to investigate"; "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 US at 690-691. As with "any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id*. at 691.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. . . . And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. [*Strickland*, 466 US at 691.]

Additionally, a failure to interview witnesses can result in ineffective assistance. See *People v Caballero*, 184 Mich App 636, 641-642; 459 NW2d 80 (1990). However, the mere failure to interview a witness is insufficient for a defendant to obtain relief; rather, defendant must show "that the failure resulted in counsel's ignorance of valuable evidence which would have substantially benefited the accused." *Id*. at 642. The decision not "to call a particular witness at trial is presumed to be a matter of trial strategy, and an appellate court does not substitute its judgment for that of counsel in matters of trial strategy." *Seals*, 285 Mich App at 21. Similarly, trial counsel's decision on what evidence to present is presumed to be a matter of trial strategy. *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). To prevail on a claim of ineffective assistance of counsel for the failure to call a witness, as for "all other claims of ineffective assistance of counsel," defendant must show counsel's performance was not objectively reasonable and that there is a reasonable probability the outcome would have been different but for counsel's performance. *People v Jurewicz*, 506 Mich 914 (2020).[2]

Defendant contends that trial counsel was ineffective for failing to investigate the basement, specifically the couch and its dimensions. However, trial counsel explained at the *Ginther* hearing that there had been no dispute over the layout of the room or size of the couch, and he did not believe that going to the scene would have helped in the defense. Additionally,

---

[2] The Michigan Supreme Court recently overturned the "substantial defense" standard for the failure to call a witness. *Jurewicz*, 506 Mich 914.

defendant, apart from referencing trial counsel's decision to not investigate the scene, fails to show what new evidence would have been garnered to affect the outcome.

Defendant focuses his challenge primarily on trial counsel's decision to not interview SK or call her as a witness at trial. SK testified at the *Ginther* hearing that, the morning after the sexual assault, she had learned of a verbal altercation between defendant and the victim. SK testified that she sent text messages to the victim asking what had happened, but the victim replied that nothing had happened. It is this denial from the victim that defendant points to on appeal as "exculpatory" evidence that trial counsel would have obtained if he had interviewed SK. SK testified that she no longer had these messages on her phone and that, even if trial counsel "had come to [her], he couldn't have gotten those text messages from [her]." Therefore, the only evidence of this exchange between SK and the victim was through SK herself. SK had no firsthand knowledge of what happened in the basement and no other firsthand knowledge of this case other than the text messages.

Trial counsel explained at the *Ginther* hearing that he did not believe SK was credible and that putting her on the stand would "torpedo[] our case." Trial counsel testified that, although aware of the purported exchange between SK and the victim, he had reviewed SK's statement to police, and she gave "conflicting statements about the sequence of events" to police. Trial counsel testified that the other witnesses had indicated that there was a "meeting" the day after the sexual assault in which SK asked them to support defendant. Trial counsel expressed concern that, through this meeting, SK had potentially engaged in witness tampering. Furthermore, given the presence of alcohol in the basement, trial counsel was concerned that, if called to testify, SK would invoke her Fifth Amendment right against self-incrimination.

Therefore, trial counsel testified that he made a tactical decision not to call SK as a witness because "[s]he's poison, and I wanted to stay as far away from her as I possibly could." Trial counsel had believed that it was far more beneficial to not call SK but, instead, to point out to the jury that the prosecution failed to call SK as a witness and to try to use this in defendant's favor without "hav[ing] to worry about her credibility" while on the witness stand. Contrary to defendant's assertions on appeal, this was sound trial strategy, and defendant has failed to show that trial counsel's actions fell below an objective standard of reasonableness.

## F. INCONSISTENT DEFENSES

Defendant's trial counsel was not ineffective for presenting inconsistent defenses.

Michigan law explicitly allows for defendants to offer inconsistent defenses at trial. MCR 2.111(A) provides in relevant part:

> (2) Inconsistent claims or defenses are not objectionable. A party may
>
> (a) allege two or more statements of fact in the alternative when in doubt about which of the statements is true;
>
> (b) state as many separate claims or defenses as the party has, regardless of consistency and whether they are based on legal or equitable grounds or on both.

Michigan caselaw demonstrates this as well. See, e.g., *People v Lemons*, 454 Mich 234, 245; 562 NW2d 447 (1997); *People v Guajardo*, 300 Mich App 26, 43; 832 NW2d 409 (2013). However, "[t]he right of defendants to raise inconsistent defenses . . . is not unlimited." *Lemons*, 454 Mich at 245 (citation omitted). Any theory, including inconsistent theories, raised by a defendant "must be supported by evidence." *Guajardo*, 300 Mich App at 43. See also *Lemons*, 454 Mich at 245.

Defendant takes issue with trial counsel's decision to argue that any sexual intercourse was consensual. However, defendant ignores the fact that this is explicitly permitted under Michigan law so long as it is supported by evidence. AB testified that defendant told her that he had consensual sex with the victim. Accordingly, this alternative theory of defense was supported by evidence and permissible under Michigan law.

Defendant contends that trial counsel "confused" the jury with these two theories and "sabotaged" defendant's defense; however, these are conclusory statements that are unsupported by law or fact. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted). When "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Id*. Trial counsel thoroughly explained his overall strategy at trial, which was that the prosecution could not prove its case, and defendant fails to show how or why this was an ineffective strategy.

Finally, defendant argues that the cumulative effect of counsel's errors warrants relief. Given that there were no errors in trial counsel's conduct, there can be no cumulative effect warranting a new trial. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

Affirmed.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica

-11-