*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 11, 2024

Plaintiff-Appellee,

v

No. 360906
Charlevoix Circuit Court
LC No. 21-016514-FH

MARK ALLEN INGERSOLL, JR.,

Defendant-Appellant.

Before: BOONSTRA, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of two counts of delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), possession with the intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), possession of a controlled substance analogue, MCL 333.7403(2)(b)(*ii*), and maintaining a drug house, MCL 333.7405(1)(d). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 46 months to 40 years for each delivery of less than 50 grams of cocaine conviction, 46 months to 40 years for the possession with the intent to deliver less than 50 grams of cocaine conviction, 36 months to 15 years for the possession of a controlled substance analogue conviction, and 36 months to 15 years for the maintaining a drug house conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was arrested after officers with the Michigan State Police Department's Straits Area Narcotic Enforcement ("SANE") team conducted two controlled purchases of cocaine using a confidential informant. Detective Jeremiah Roberts of SANE testified that in January 2020, he and another officer were contacted by a confidential informant (CI), who informed them that she was able to purchase cocaine from defendant with her friend, SH. SH had previously purchased cocaine from defendant. The SANE detectives provided CI and SH with funds to purchase the cocaine, and the two went to defendant's residence and purchased 3.5 grams of cocaine that they then turned over to the SANE detectives. After the first controlled purchase, CI set up the second controlled purchase by texting defendant's girlfriend. The SANE detectives provided CI with

funds, and she purchased one gram of cocaine from defendant at the same location where the first controlled purchase had occurred.

Once the second controlled purchase was completed, Detective Roberts used the information provided by CI and SH to obtain a search warrant, which was executed at the house where the controlled purchases had occurred. During the search, defendant was found in the kitchen, his girlfriend was found in the living room, and a child was found upstairs. After defendant and his girlfriend were escorted out of the house, officers searched the residence and found Suboxone[1] pills on the TV stand, three bags of cocaine in a kitchen drawer, and a wallet that contained money that matched the serial numbers of the money given to CI to carry out the controlled purchases.

At trial, SH testified regarding the controlled purchases. SH stated that she "knew that [defendant and his girlfriend] were selling drugs in a house with a baby," that defendant's girlfriend was pregnant and that there was a "a little baby running with a coke bag in the house" during the first controlled purchase, and that CI "grabbed [the bag of cocaine] from the baby." Defense counsel objected to SH's testimony on various grounds, including that it was non-responsive, hearsay, and lacked a foundation, and the trial court sustained the objection and struck the testimony, instructing the jury to disregard it.

During her testimony, SH made the following interjection:

SH: I—hold on, can I say something?

The Court: No.

*  *  *

SH: No, I need to say something though. This girl that's in this courtroom I do not want her in here. She has been threatening me, she's been trying to have people set me up and I do not want her in here.

The trial court admonished SH and instructed her to only answer questions. Nonetheless, and despite the trial court's repeated admonishments, SH made several additional nonresponsive statements, including "And, you know, I don't feel bad about this. For the record, I don't feel bad about this." SH additionally testified that defendant's girlfriend's mother had been harassing her and trying to intimidate her regarding her testimony, and she identified her by her full name and indicated that she was present in the courtroom. SH also said, "I just said that [defendant] was guilty," and she stated repeatedly that she didn't "want to be here." The trial court ordered SH's statement regarding defendant's guilt stricken and instructed the jury to disregard it. The trial court then removed the jury. Outside the presence of the jury, SH made additional statements about defendant and his family, stating that "they will come for me and my three children." SH also admitted to having consumed alcohol that day and taken prescribed medication, including

---

[1] Suboxone is the brand name for buprenorphine, a Schedule III controlled substance that is used for the treatment of substance use disorders. See MCL 333.7333a(11).

Suboxone. After SH refused to submit to a preliminary breath test, the trial court excused her, struck her entire testimony from the record, and instructed the jury not to consider it. Defense counsel moved for a mistrial, which the trial court denied.

Defendant's girlfriend, Bailey Falting, testified that defendant was her boyfriend and that they had a child together. She denied seeing CI or SH purchase cocaine from defendant on the date of the first controlled buy, despite being in the house. Falting testified that CI had reached out to her to purchase cocaine, but denied that defendant sold CI cocaine at the second controlled buy. She denied any knowledge of defendant's alleged drug sales. The prosecution impeached Falting with her statements made during a police interview regarding her going to Detroit with defendant to purchase cocaine. Falting denied the truth of those earlier statements, stating that the interviewing deputy had threatened to take her children away and lock her up. Falting also testified that CI had "previously set up" her mother, and admitted that she had accused CI of being a "snitch." During the prosecution's examination of Falting, the trial court admitted into evidence photographs of strips of Suboxone located on the TV stand in the home, and a photograph of Falting and her child that had been found in the home.

The trial court also admitted into evidence a recording of defendant's interview with a SANE detective following his arrest. In the recording of defendant's interview, defendant stated that he was "the biggest drug dealer in Northern Michigan" and that he traveled to Detroit to purchase cocaine to sell.

Defendant was convicted as described. At sentencing, the trial court assessed defendant 10 points for Offense Variable (OV) 14, finding that defendant was the leader in a multiple offender situation. The trial court also assessed defendant 10 points for OV 15, related to the commission of an aggravated controlled substance offense. This appeal followed.

## II. SH'S TESTIMONY

Defendant argues that the trial court erred by denying his motion for a mistrial based on SH's stricken testimony. Defendant further argues that the trial court violated his constitutional right to confrontation, and that he was prejudiced by the violation. We disagree with both arguments.

## A. DENIAL OF MISTRIAL

Defendant argues that the trial court abused its discretion by denying his motion for a mistrial after SH's testimony. We disagree. We review for an abuse of discretion a trial court's decision on a motion for mistrial. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014); *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Ortiz-Kehoe*, 237 Mich App 508, 513-514; 603 NW2d 802 (1999). "A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36;

755 NW2d 212 (2008). However, generally, when a trial court provides "a comprehensive curative instruction to the jury" following nonresponsive, volunteered testimony, any possible prejudice to a defendant is alleviated because jurors are presumed to follow the instructions given. *People v Waclawski*, 286 Mich App 634, 710; 780 NW2d 321 (2009).

During the prosecutor's direct examination, SH made nonresponsive statements indicating that defendant's girlfriend's mother had threatened her and that she saw a baby with cocaine in its hands at defendant's house, and she opined that defendant was guilty. Defense counsel promptly objected to SH's testimony. After SH admitted that she had consumed alcohol that day and had refused to submit to a preliminary breath test, the trial court agreed to stop the prosecution's direct examination of SH, and the court struck SH's entire testimony from the record. The trial court denied defense counsel's motion for a mistrial, opining that the jury was not going to have a difficult time disregarding SH's testimony.

After the jury was brought back into the courtroom, the trial court instructed the jurors that SH's testimony had been stricken, and the court ordered them to not consider the testimony when determining whether defendant was guilty of the charged offenses. During the trial court's final instructions to the jury, the court told the jurors that they should consider only properly admitted evidence and could not consider excluded or stricken evidence. The court also reaffirmed that SH's testimony was not evidence, was stricken from the record, and should not be considered.

"Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). Defendant contends that the jury instructions were insufficient to cure the prejudicial effect of SH's testimony, but has not provided this Court with relevant authority to support his argument. Further, defendant has failed to explain *why* the curative instruction in this case was insufficient to cure the prejudicial effect of SH's testimony. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kroll*, 341 Mich App 217, 236 n 15; 989 NW2d 822 (2022) (quotation marks and citation omitted). In light of the trial court's comprehensive curative instruction, *Waclawski*, 286 Mich App at 710, defendant has not shown that the trial court's denial of his motion for a mistrial was outside the range of principled outcomes. *Lane*, 308 Mich App at 60.

## B. CONFRONTATION CLAUSE

Defendant also argues that he was denied the right to confrontation when SH was excused before his counsel could cross-examine her. While defendant is factually correct that he was unable to cross-examine SH, we conclude that no constitutional error occurred. "Whether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

A criminal defendant has the right to confront the witnesses against him or her. US Const, Am VI; Const 1963, art 1, § 20; MCL 763.1. "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008)

(quotation marks and citations omitted). "By its straightforward terms, the Confrontation Clause directs inquiry into two questions: (1) Does the person in controversy comprise a 'witness against' the accused under the Confrontation Clause; and (2) if so, has the accused been afforded an opportunity to 'confront' that witness under the Confrontation Clause?" *People v Fackelman*, 489 Mich 515, 562; 802 NW2d 552 (2011). "[T]he Confrontation Clause applies only to statements used as substantive evidence." *Id*. at 528.

In this case, the trial court excused SH before defense counsel had a chance to perform cross-examination. However, the trial court also struck the entirety of SH's testimony on direct examination. As noted, defendant has not overcome the presumption that the jury followed its instructions to disregard her testimony. *Zitka*, 335 Mich App at 348. None of SH's testimony, therefore, was employed as substantive evidence against defendant, and SH was, ultimately, not a "witness against" defendant under the Confrontation Clause. *Id*. at 562.

Further, even if defendant's right to confrontation was violated, defendant has failed to demonstrate that he was prejudiced by his inability to cross-examine SH. As noted, the jury was instructed to disregard the entirety of SH's testimony. Neither party has challenged the trial court's decision to strike SH's testimony. Defendant has not demonstrated a reasonable probability that the outcome of his trial would have been different if SH had been subject to both direct and cross-examination, rather than merely direct examination, before being excused and having her testimony stricken from the record.

## III. ADMISSION OF EVIDENCE

Defendant also argues that the trial court erred by admitting statements defendant made in his police interview, as well as portions of Falting's testimony and photographs of defendant's home. We disagree. We review for an abuse of discretion a trial court's decision to admit or deny evidence. *People v Smith*, 336 Mich App 79, 105; 969 NW2d 548 (2021). We review de novo questions of law concerning the admissibility of that evidence. *People v Hill*, 335 Mich App 1, 5; 966 NW2d 156 (2020).

To the extent defendant's arguments are unpreserved, we review them for plain error affecting substantial rights. *Solloway*, 316 Mich App at 197. "To obtain relief, it must be found that (1) an error occurred, (2) the error was plain or obvious, and (3) the plain error affected the defendant's substantial rights. The defendant bears the burden of establishing that his substantial rights were affected." *Id*. (citation omitted); see also *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## A. DEFENDANT'S STATEMENTS

The prosecution introduced an audio recording of defendant's interview with a SANE deputy. In the recording of defendant's interview, defendant admitted that he was the biggest drug dealer in Northern Michigan and that he traveled to Detroit to purchase cocaine to sell. Defendant argues that these statements constituted other-acts evidence, see MRE 404(b), that was admitted without a proper purpose and that was more prejudicial than probative. We disagree.

Defendant's admissions that he was a high-level drug dealer and that he traveled to Detroit to pick up cocaine were not admitted as other-acts evidence. Rather, this evidence was admitted as an admission by a party under the hearsay rules. Before jury deliberations, the trial court noted that "[t]he prosecutor has introduced evidence of a statement that it claims the defendant made," and the court instructed the jury, in relevant part, that:

> Before you may consider such an out of court statement against the defendant you must first find that the defendant actually made the statement as given to you.
>
> If you find the defendant did make the statement you may give the statement whatever weight you think it deserves.

"MRE 404(b) does not apply to a defendant's prior statements of intent. Rather, the appropriate analysis is whether the prior statement is relevant, and if so whether its probative value outweighs its potential prejudicial effect." *People v Goddard*, 429 Mich 505, 518; 418 NW2d 881 (1988).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Evidence that reflects a defendant's consciousness of guilt is relevant." *People v Parrott*, 335 Mich App 648, 680; 968 NW2d 548 (2021). Defendant's admissions that he was a drug dealer and that he traveled to Detroit to purchase cocaine were highly probative of defendant's consciousness of his guilt in maintaining a drug house, possessing cocaine with the intent to deliver, and delivering cocaine. *Parrott*, 335 Mich App at 680.

Additionally, the probative value of defendant's admissions was not substantially outweighed by the danger of unfair prejudice. MRE 403 states that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Unfairly prejudicial evidence is more than evidence that is damaging to a defendant's case. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). Any relevant evidence will be damaging to a party's case to some extent; unfair prejudice exists when there is a risk that minimally probative evidence will be given undue or preemptive weight by the jury, *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998), or that the evidence might "stir the jurors to such passion that they would be swept beyond rational consideration of the defendant's guilt or innocence." *People v Starr*, 457 Mich 490, 503; 577 NW2d 673 (1998).

Defendant's admissions provided the jury with highly relevant evidence concerning his sales of cocaine out of his home and his state of mind at the time of his arrest. The trial court properly instructed the jury to consider defendant's statements only if the jury found "that the defendant actually made the statement as given." Because the evidence was relevant to "defendant's consciousness of guilt," *Parrott*, 335 Mich App at 680, and because the jury is presumed to have followed the court's instructions, *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011), and the evidence was not unfairly prejudicial, the trial court did not abuse its discretion by allowing the prosecutor to introduce defendant's admissions during his interview with the SANE deputy. *Smith*, 336 Mich App at 105.

## B. FALTING'S TESTIMONY

Defendant also argues that the trial court erred by admitting testimony from Falting related to "snitches" and threats toward witnesses. Additionally, defendant argues that the prosecutor impermissibly played the recording of his girlfriend's interview with the SANE deputy to impeach her testimony. We disagree.

"Witness credibility is a matter for the jury to decide." *People v Hieu Van Hoang*, 328 Mich App 45, 68; 935 NW2d 396 (2019). Evidence of threats against a witness may be useful to a jury when determining the credibility of that witness. M Crim JI 3.6(1)(f). "If a witness is offering relevant testimony, whether that witness is truthfully and accurately testifying is itself relevant because it affects the probability of the existence of a consequential fact." *People v Mills*, 450 Mich 61, 72; 537 NW2d 909 (1995). "A witness can be impeached at trial, and the jury can consider whether a witness was lying in making its credibility determinations." *Swain v Morse*, 332 Mich App 510, 524; 957 NW2d 396 (2020).

In this case, Falting's testimony that CI had "previously set up her mother" was probative of Falting's credibility and her bias against CI. The admission of Falting's statements in her police interview was proper in light of Falting's inconsistent statements. See MRE 613; see also *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002) ("Under MRE 613, subject to certain restrictions, a witness may be examined concerning a prior inconsistent statement for impeachment purposes."). The challenged evidence bore directly on her credibility as a witness. "[I]t is the role of the jury, not this Court, to determine the weight of the evidence or the credibility of witnesses." *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012) (quotation marks and citation omitted).

Moreover, even though Falting's interview with the SANE deputy may have implicated defendant in the charged offenses, the interview was admitted to impeach her testimony and to question her credibility. "[E]vidence of a prior inconsistent statement of the witness may be admitted to impeach a witness even though the statement tends directly to inculpate the defendant." *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997). The jury was instructed to consider Falting's "inconsistent statement made before the trial only to help . . . decide how believable the witness' testimony was when testifying here in court." "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *Zitka*, 335 Mich App at 348. Defendant has failed to establish that the trial court erred by admitting this evidence. *Smith*, 336 Mich App at 105.

## C. USE OF PHOTOGRAPHS DURING FALTING'S TESTIMONY

Finally, defendant argues that the prosecution impermissibly reminded the jury of SH's improper and stricken testimony when the prosecution asked Falting whether she lived in defendant's home with her children and asked Falting questions regarding certain photographs of the interior of the home taken by the police officers. We disagree.

The prosecution asked Falting who was living with defendant when the controlled purchases occurred, and also asked Falting the age of her children. Falting testified that she and several other adults were living with defendant the time, but did not state that her children were

living with her in the home at the time of the charged offense. Moreover, Falting testified that she did *not* see defendant sell either CI or SH cocaine in the home, despite being present at the home with her child that day. We see no error in the prosecution questioning Falting about what she might have witnessed on the day of the controlled purchase, merely because her answers indicated that she had one of her children with her that day.

Defendant also argues that the introduction of the photographs of Suboxone on the TV stand and the photograph of Falting with her child reinforced SH's improper testimony in the jury's mind and made it impossible for the jury to disregard it. We disagree. Defendant has failed to demonstrate that it was plain error to admit the photographs during defendant's girlfriend's testimony. In the photograph depicting the child, the child is on Falting's lap in the living room. No cocaine or other drugs appear in the picture. The record demonstrates that the cocaine was in the kitchen, not in the living room. Moreover, the photograph of the Suboxone found on the TV stand does not depict Falting or her child, nor did any witness, including SH, testify that Falting's child had access to Suboxone. Defendant has not demonstrated that an error occurred or that his substantial rights were affected. *Carines*, 460 Mich at 763.

IV. SENTENCING

Defendant argues that the trial court erred in the scoring of OVs 14 and 15, requiring resentencing. We agree that the trial court erred in part in scoring OV 15, but conclude that resentencing is not required.

"This Court reviews for clear error a trial court's findings in support of particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). Clear error exists when this Court is "left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). "Under the sentencing guidelines, the circuit court's factual determinations . . . must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated by *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019).

A. OV 14

Defendant argues that trial court erred by assessing 10 points for OV 14 for each of his convictions. We disagree.

OV 14 addresses "the offender's role." MCL 777.44(1). A sentencing court is required to assess 10 points for OV 14 when "[t]he offender was a leader in a multiple offender situation." MCL 777.41(1)(a). "The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). "[T]he plain meaning of 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of a group." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (quotation marks and citation omitted). A defendant can be involved in a multiple-offender situation even if the defendant is "accompanied by only one other person and even though the other person was not charged in connection with the crime for which the defendant was convicted." *Id*. at 23.

The evidence supports the trial court's determination that defendant was the leader in a multiple-offender situation. During defendant's initial interview with the SANE deputy, defendant stated that Falting had possession of the money from the drug sales. Defendant acknowledged that Falting knew he was selling cocaine, but defendant took full responsibility. Falting was subject to criminal liability because of her role in the controlled purchases, but charges were not pursued by the prosecutor's office. Even though at trial Falting denied knowing that defendant was selling cocaine, she acknowledged that CI had contacted her to purchase cocaine. Accordingly, the trial court did not err by assessing 10 points for OV 14. *McFarlane*, 325 Mich App at 531-532.

## B. OV 15

Defendant also argues that the trial court erred by scoring ten points for OV 15 for his delivery and possession with the intent to deliver convictions, and five points for his possession of a controlled substance analogue (Suboxone) and maintaining a drug house convictions. We agree that the scoring of OV 15 was erroneous for all of defendant's convictions except maintaining a drug house.

OV 15 addresses "aggravated controlled substance offenses." MCL 777.45(1). Under MCL 777.45(1)(g), a sentencing court is required to assess ten points for OV 15 when:

> The offense is a violation of section 7401(2)(a)(i) to (iii) pertaining to a controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(iv) and was committed in a minor's abode, settled home, or domicile, regardless of whether the minor was present.

Five points are assessed for OV 15 when "[t]he offense involved the delivery or possession with intent to deliver marihuana or any other controlled substance or a counterfeit controlled substance or possession of controlled substances or counterfeit controlled substances having a value or under such circumstances as to indicate trafficking." MCL 777.45(1)(h).

Defendant argues that the trial court erred by assessing 10 points for OV 15 for his delivery and possession with the intent to deliver convictions because he was not convicted of an offense under MCL 333.7401(a)(*i*) to (*iii*). We agree.

Contrary to the prosecutor's assertion, defendant had to be convicted of an offense under MCL 333.7401(2)(a)(*i*) to (*iii*) for the trial court to assess 10 points for OV 15. See *People v Gray*, 297 Mich App 22, 31-32; 824 NW2d 213 (2012). Defendant was not convicted under MCL 333.7401(2)(a)(*i*), (*ii*), or (*iii*); instead, defendant was convicted of delivery of less than 50 grams of cocaine and possession with the intent to deliver less than 50 grams of cocaine under MCL 333.7401(2)(a)(*iv*). Therefore, the trial court clearly erred by assessing ten points for OV 15 for these convictions. *McFarlane*, 325 Mich App at 531-532.

The prosecution concedes that the trial court erred by assessing five points for OV 15 for defendant's possession of Suboxone conviction. We agree. As used in MCL 777.45, " '[d]eliver' means the actual or constructive transfer of a controlled substance from 1 individual to another regardless of remuneration," see MCL 777.45(2)(a), while " '[t]rafficking' means the sale or delivery of controlled substances or counterfeit controlled substances on a continuing basis to 1 or more other individuals for further distribution," see MCL 777.45(2)(c). The offense for which

defendant was convicted did not involve delivery or intent to deliver Suboxone, and there was no record evidence that defendant engaged in trafficking Suboxone. Therefore, the trial court erred by assessing five points for OV 15 for defendant's possession of Suboxone conviction. *McFarlane*, 325 Mich App at 531-532.

Finally, defendant argues that the trial court erred by assessing five points for OV 15 for defendant's maintaining a drug house conviction. We disagree.

In *People v Jackson*, 497 Mich 857, 858; 852 NW2d 897 (2014), our Supreme Court explained, in relevant part, that

> [a] proper reading of MCL 777.45(1)(h) reveals two alternative bases for scoring that OV at five points: (1) when the offense involved the delivery or possession with intent to deliver marihuana or any other controlled substance or counterfeit controlled substance; and (2) when the offense involved possession of controlled substances or counterfeit controlled substances having a value or under such circumstances as to indicate trafficking.

Defendant's conviction for maintaining a drug house was based on his use of the home as a location to deliver cocaine. Cocaine is a schedule 2 controlled substance pursuant to MCL 333.7214(a)(*iv*). Therefore, the record supports by a preponderance of the evidence that defendant's maintaining a drug house conviction "involved the delivery . . . [of a] controlled substance." MCL 777.45(1)(g), regardless of "trafficking." Accordingly, the trial court did not err by assessing five points for OV 15 for defendant's maintaining a drug house conviction. *McFarlane*, 325 Mich App at 531-532.

Although defendant has established error in the scoring of OV 15, he has not established entitlement to resentencing. Although the trial court erred in its scoring of OV 15 for defendant's delivery of less than 50 grams of cocaine, possession with the intent to deliver, and possession of Suboxone convictions, the subtraction of ten points for defendant's delivery and possession with the intent to deliver convictions, or the subtraction of five points for defendant's possession of Suboxone conviction, would not change defendant's OV level or his defendant's recommended guidelines ranges. MCL 777.65. Therefore, resentencing is not required. See *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006).

Affirmed.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle